# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

WEIJIE WENG

Plaintiff,

DOES 1-35; ZOETOP BUSINESS CO.,
LTD. d/b/a "SHEIN;" and SHEIN
DISTRIBUTION CORPORATION;
ROADGET BUSINESS PTE. LTD.
(SINGAPORE PRIVATE COMPANY
LIMITED BY SHARES); Zhangjiagang
Bai Xuan Import And Export Trade Co.,
Ltd; MIDA; Tiacham; Shenzhen JiEr
Trading Co.,Ltd; Zempertoopa; the
Danna Belle Store;  the bilison Store;
Kehen-;  Fragarn;  Gumipy;  Xaoxeijuq;
Pybcvrrd;  Babany Bebe; the bilison
Store; the GRNSHTS Store; Aunavey;
Blotona; Kiapeise; Maemukilable;
Kgurtagh; The little Girl's store; the
Shalofer Store; kidsfashionshop;
feikebella;  babany;  Baby's Boutique
Store; Princessgirls; Lishui Fanhua
Technology Co., Ltd; F&H Baby Store;
YK&Loving Official Store; Hangzhou
Lingpai Network Technology Co., Ltd;
Prettybaby2020

      Defendants.

C.A.No.____

22-CV-7082

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE
APPLICATION FOR A TEMPORARY RESTRAINING ORDER, EXPEDITED
DISCOVERY ORDER, ORDER AUTHORIZING ALTERNATIVE SERVICE, AND
ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

Weijie Weng
Forever Passion Dream,Inc
11430 DALIAN CT 2nd Floor
College Point NY 11356
www.ilove-mama.com
facebook.com/foreverilovemama
babanycopyright@outlook.com

## TABLE OF CONTENTS

INTRODUCTION ....... ................................................................................................ 1

STATEMENT OF FACTS .......... ................................................................. 4

ARGUMENT ........................................................................................................... 5

I.    THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS ....................................................5

II.   Weijie MEETS THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION................................................................................................................................
      g

      A.   Weijie Is Likely To Succeed on The Merits of Its Claims Against Defendants. ........................................................9

      B.   Weijie Will Suffer Irreparable Harm if the Court
           1.    Does Not Grant Immediate Relief.................................,....,11

      C.   The Balance of Hardships Weighs in Weijie's Favor..............12

      D.   The Injunctive Relief Sought By Weijie Serves the Public Interest. ........................................................13

      E.   Weijie's Request for Injunctive Relief Is Timely. ...............,. ...........................................................14

III.  Weijie IS ENTITLED TO AN ORDER PREVENTING THE TRANSFER OF DEFENDANTS' ASSETS ..............
      15

      A.   The Court Has Authority to Freeze Defendants' Assets Under Federal Law and Through Its Equitable Powers.15

      B.   The Court Also Has Authority to Freeze Defendants' Assets Under State Law. ........................................................19

      C.   Ex Parte Relief Should Be Granted In This Case ........................................................21

      D.   The Court Should Not Require Weijie To Post a Bond or Alternatively, Require Only a Minimal Bond..............
           22

IV.   Weijie IS ENTITLED TO CONDUCT EXPEDITED DISCOVERY........................................................22

V.    Weijie IS ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON THE DOE DEFENDANTS AND THE DEFENDANTS LOCATED IN CHINA. ...........................................................
      25

      A.C.P.L.R. § 308 Authorizes Alternate Service on Individuals in the United States. ........................................................26

      B. Rule 4(f)(3) of the Federal Rule of Civil Procedure Authorizes Alternate Service on Individuals in a Foreign Country.
         27

CONCLUSION............................................................................................................ 31

iii

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.,*
   239 F.3d 1004 (9th. Cir. 2001) .............. ........................................................10

*Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,*
   No. 5:00-CV-1246 (NPM/DEP), 2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331 (N.D.N.Y.
   Nov. 8, 2000)........................................................................................................
   17

*Arista Records LLC v. Doe,*
   604 F.3d 110 (2d Cir. 2010) .............................................................................10,
   23

*Ayyash v. Bank Al-Madina,*
   233 F.R.D. 325 (S.D.N.Y. 2005)........................................................................20,
   23

*Ball v. Metallurgie Hoboken-Overpell, S.A.,*
   902 F.2d 194 (2d Cir. 1990), *cert. denied,* 498 U.S. 854 (1990)............................,.,..,..,. ...............5

*Benham Jewelry Corp. v. Aron Basha Corp.,*
   No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957 (S.D.N.Y. Oct. 14,
   1997) ................................................................................................................ 23

*BigStar Entertainment, Inc. v. Next Big Star, Inc.,*
   105 F. Supp. 2d 185 (S.D.N.Y. 2000) .....................................................................9

*Brennlag Int'l Chems., Inc. v. Bank of India,*
   175 F.3d 245 (2d Cir. 1999) ..............................................................................
   17

*Broad Music, Inc. v. PAMDH Entcrs., Inc.,*
   No. 13 Civ. 2255 (KMW), 2014 WL 2781846, 2014 U.S. Dist. LEXIS 84409 (S.D.N.Y. June
   19, 2014) .......................................................................................................... 11

*Broad%ot v. Diaz (In re International Telemedia Assocs.),*
   245 B.R. 713 (Bankr. N.D. Ga. 2000) .................................................................29,
   30

*Buccellati Holding Italia SPA v. Laura Buccellati, LLC,*
   935 F. Supp. 2d 615 (S.D.N.Y. 2013).....................................................................6

*Citibank, N.A. v. Citytrust,*
   756 F.2d 273 (2d Cir. 1985) .............................................................................
   15

*CJ Prods. LLC v Snuggly Plushez LLC,*
   809 F. Supp. 2d 127 (E.D.N.Y 2011).....................................................................10,
   14

*Complex Sys., Inc. v. ABN Amro Bank N.V.,*
    No. 08 Civ. 7497 (KBF), 2014 WL 1883474, 2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9,
    2014) ............................................................................................................ 12

*Dalatech Enters. LLC v. FF Magnat Ltd.,*
    No. C 12-4500 CRB, 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711 (N.D. Cal. Sept. 14,
    2012) ............................................................................................................ 16

*Dell Inc. v. BelgiumDomains, LLC,*
    No. 07-22674 CIV-JORDAN, 2007 WL 6862341, 2007 U.S. Dist. LEXIS 98651 (S.D. Fla.
    Nov. 21, 2007) ............................................................................................................
    25

*DeWitt Stern Group, Inc. v. Eisenberg,*
    No. 13 Civ. 3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4,
    2013) ............................................................................................................ 22

*D.H. Blair & Co. v. Gottdiener,*
    462 F.3d 95 (2d Cir. 2006) ............................................................................................................ 7

*Dlgftal Sin, Inc. v. Does 1-176,*
    279 F.R.D. 239 (S.D.N.Y. 2012) ............................................................................................................
    23

*Doctor's Assocs. v. Distajo,*
    107 F.3d 126 (2d Cir. 1997) ............................................................................................................
    22

*Doctor 's Assocs. v. Stuart,*
    85 F.3d 975 (2d Cir. 1996) ............................................................................................................
    22

*Elcomeler, Inc. v. TQC-USA, Inc.,*
    No. 12-cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874 (E.D. Mich. Feb. 14,
    2013) ............................................................................................................ 30

*Elite Licensing, Inc. v. Thomas Plastics, Inc.,*
    250 F. Supp. 2d 372 (S.D.N.Y. 2003) ............................................................................................................
    24

*Elsevier, Inc. v. Does 1-10,*
    No. 16 Civ. 1245 (RA), Ex Parte Order (Feb. 2, 2016) ............................................................................
    18

*Experience Hendrix, LLC v. Chalpin,*
    461 F. Supp. 2d 165 (S.D.N.Y. 2006) ............................................................................................................
    17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991)........................................................................................10

*FTC v. PCCare24 7 Inc.,*
No. 12 Civ. 7189 (PAE), 2013 WL 841037, 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7,
2013) ...................................................................................................................,...................27, 2g,
29

*Gaffigan v. Doe,*
689 F. Supp. 2d 1332 (S.D. Fla. 2009) ...................................................................................
30

*Graubard Mollen Dannett & Horowitz v. Kostantinides,*
709 F. Supp. 428  (S.D.N.Y. 1989) .........................................................................................
20

*Gucci Am. v. Bank of China,*
68 F.3d 122 (2d  Cir. 2014)......................................................................................................
15

*Gucci Am., Inc. v. Frontline Processing  Corp.,*
721 F. Supp. 2d 228  (S.D.N.Y. 2010) .....................................................................................
6

*Gurung v. Malhotra,*
279 F.R.D. 215  (S.D.N.Y. 2011) .............................................................................................
29

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.,*
826 F. Supp. 2d 619  (S.D.N.Y. 2011) .....................................................................................
11

*Ideavillage Prods. Corp. v. Bling Boutique Store,*
No. 16-CV-9039 (KMW), 2017 U.S. Dist. LEXIS 61189 (S.D.N.Y. Apr. 21, 2017)...................
15

*Ideavillage Prods. Corp. v. Bling Boutique Store,*
No. 16-CV-9039 (KMW), 2017 US Dist. LEXIS 61189 (S.D.N.Y. Apr. 21, 2017).....................
15

*In re Feit & Drexler, Inc.,*
760 F.2d 406 (2d  Cir. 1985) ...................................................................................................
16

*Ingraham v. Carroll,*
687 N.E.2d 1293 (N.Y. 1997) .................................................................................................
7

*ITC Entertainment, Ltd. v. Nelson Film Partners,*
  714 F.2d 217 (2d Cir. 1983) .................................................................................................
  20

*J.P. Morgan Sec. v. La. Citizens Prop. Ins. Corp.,*
  712 F. Supp. 2d 70 (S.D.N.Y. 2010) ...................................................................................
  9

*Jazini by Jazini v. Nissan Motor Co.,*
  148 F.3d (2d Cir. 1998) .......................................................................................................
  5

*Johnson & Johnson v. Guilin Chung Fat Biotech Co.,*
  No. 07-CV-1295, 2018 U.S. Dist. LEXIS 8399 (E.D.N.Y. Jan. 16, 2018) ...................................
  19

*JSC Foreign Econ. Ass 'n Technostroyexport v. Inf '1 Dev. & Trade Servs., Inc.,*
  306 F. Supp. 2d 482, 487 (S.D.N.Y. 2004)..................................,...............................................
  20

*Affl@ v. Innovation Books,*
  976 F.2d 824 (2d Cir. 1992) ..................................................................................................
  14

*L.C. Page & Co. v. Fox Film Corp.,*
  83 F.2d 196 (2d Cir. 1936) ...................................................................................................
  13

*Libancell S.A.L. v. Republic ofLeb.,*
  No. 06 Civ. 2765 (HB), 2006 WL 1321328, 2006 U.S. Dist. LEXIS 29442 (S.D.N.Y. May 16,
  2006) .......................................................................................................,...........................
  21

*Lions Gate Films, Inc. v. Doe,*
  No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, 2014 U.S. Dist. LEXIS 110032 (C.D.
  Cal. Aug. 18, 2014) ................................................................................................................
  16

*Living Scriptures, Inc. v. Doe,*
  No. 1:10 cv 0182 DB, 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968 (D. Utah Nov. 10,
  2010) ...................................................................................................................................
  23

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,*
265 F.R.D. 106 (S.D.N.Y. 2010) ........................................................................................
27

*Majorica, S.A. v. R.H. Macy & Co.,*
762 F.2d 7, 8 (2d Cir. 1985).........................................................................................
15

*Mason Tenders Dist. Council Pension Fund v. Messera,*
No. 95 Civ. 9341 (RWS), 1997 WL 223077, 1997 U.S. Dist. LEXIS 5931 (S.D.N.Y. May 1,
1997) ...............................................................................................................................
16

*McCluske y v. Bedford High Sch. ,*
No. 2:09-14345, 2010 WL 2696599, 2010 U.S. Dist. LEXIS 62608 (E.D. Mich. June 24,
2010) ...............................................................................................................................
30

*McGraw-Hill Cos., Inc. v. /ngenfHm Techs. Corp.,*
75 F. Supp. 2d 252 (S.D.N.Y. 2005).......................................................................................6

*McGrar!-Hill Global Educ. Holdings, LLC v. Mathrani,*
295 F. Supp. 3d 404 (S.D.N.Y. 2017).....................................................................................5

*McGraw-Hill Global Education Holdfngs, LLC ct al. v. Malhrani et*
*al.,*
No. 1:16-cv-08530-WHP, Ex Parte Order (November 2, 2016) ......                                        8

*Microsoft Corp. v. Doe,*
No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122 (E.D.N.Y. Nov. 13, 2012)......
30

*Microsoft Corp. v. Jun Yan,*
No. 3:10-cv-162 (VLB), 2010 U.S. Dist. LEXIS 14934 (D. Conn. Feb. 18, 2010).....................
18

*Motorola, Inc. v. Abeckaser,*
No. 07-CV-3963 (CPS)(SMG), 2009 WL 1362833, 2009 U.S. Dist. LEXIS 40660 (E.D.N.Y
2009) ...............................................................................................................................
7

*North Face Apparel Corp. v. Moler,*
No. 12 Civ. 6688 (JGK) (GWG), 2015 WL 4385626, 2015 U.S. Dist. LEXIS 93133
(S.D.N.Y.
July 16, 2015)..........................................................................................................

13

*Park Wesl Galleries, Inc. v. Franks,*
No. 12 Civ. 3007, 2012 U.S. Dist. LEXIS 86629 (S.D.N.Y. June 20, 2012)....,. ...................6

*Pearson Education, Inc. et al v. Does 1-100,*
No. 1:17-cv-00203-DAB, Ex Parte Order (January 17, 2017) ...............................................8

*Pearson Education, Inc. ct al v. FBAAZ Corp.,*
No. 1:17-cv-00203-DAB, Ex Parte Order  (May 10, 2017) ...................................................8

*Pearson Education, Inc. v. Gupta,*
No. 1:16-cv-04253-LLS, Ex Parte Order (June 8, 2016) ......................................................8

*Philip Morris USA Inc. v. Veles  Ltd. ,*
No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 13, 2007) ....................................................................................................... 27, 28. 29. 30

*Prediction Co. v. Rajgarhia,*
No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist. LEXIS 26536 (S.D.N.Y. Mar. 22, 2010) ............................................................................................................................ 28

*Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC,*
587 F. Supp. 2d 548 (S.D.N.Y. 2008) .................................................................................... 16

*Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Services of Va.,*
144 F. Supp. 2d 241 (S.D.N.Y. 2001) .................................................................................... 16

*Republic of Philippines v. Marcos,*
806 F.2d 344 (2d Cir. 1986) .................................................................................................... 15

*Rio Props., Inc. v. Rio Int'l Interlink,*
84 F.3d 1007 (9th Cir. 2002) ................................................................................................... 27

*Rogers v. eColor Studio,*
No. 11-CV-4493 (ARR) (RER), 2013 WL 750120, 2013 U.S. Dist. LEXIS 27029 (E.D.N.Y. reb 27, 20i3)

6

*RSM Prod. Corp. v. Fridman,*
  No. 06 Civ. 11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713 (S.D.N.Y. May
  24, 2007) ......................................................................................................................................
  27

*Safadjou v. Mohammadi,*
  964 N.Y.S 2d 801 (N.Y. App. Div. 2013) ...............................................................................
  27

*Salinger v. bolting,*
  607 F.3d 68 (2d Cir. 2010) ................................................................................................9,
  11

*Sea Carriers Corp. v. Empire Programs, Inc.,*
  No. 04 Civ. 7395 (RWS), 2006 WL 3354139, 2006 U.S. Dist. LEXIS 83843 (S.D.N.Y. Nov.
  20, 2006) ....................................................................................................................................
  17

*Serio v. Black, Davis & Shue Agency, Inc. ,*
  No. 05 Civ. 15 (MHD), 2005 WL 3642217, 2005 U.S. Dist. LEXIS 39018 (S.D.N.Y. Dec.
  30,
  2005) ..........................................................................................................................................
  18

*Signal Capital Corp. v. Frank,*
  895 F. Supp. 62 (S.D.N.Y.1995) ...........................................................................................
  17

*Starmedia Network, Inc. v. Star Media, Inc. ,*
  No. 00 CIV. 4647, 2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. Apr. 23, 2001)............................7

*Sulzer Mixpac AG v. Medenstar Indus. Co.,*
  312 F.R.D. 329 (S.D.N.Y. Nov. 27, 2015)...............................................................................
  29

*Sulzer Mixpac AG v. Medenstar Indus. Co.,*
  312 F.R.D. 329 (S.D.N.Y. 2015) .............................................................................................
  31

*Sunward Elecs., Inc. v. McDonald,*
  No. 03-CV-0345, 2003 WL 25719935, 2003 U.S. Dist. LEXIS 28127 (N.D.N.Y Apr. 24,
  2003) ........................................................................................................................................

5

*TracFone Wireless, Inc. v. Holden Prop. Servs., LLC,*
    299 F.R.D. 692 (S.D. Fla. 2014) .................................................................................
    25

*TrueEX, LLC v. MarkitSERV Ltd.,*
    No. 17-cv-3400 (LAK), 2017 WL 3084422, 2017 U.S. Dist. LEXIS 112396 (S.D.N.Y. July
    18, 2017). .................................................................................................................
    12

*Twentieth Century Fox Film Corp. v. Mow Trading* Corp.,
    749 F. Supp. 473 (S.D.N.Y. 1990) ............ ...... .. ..     .., .........................................
    24

*United States ex rel. Barko v. Halliburton  Co.,*
    952 F. Supp. 2d 108  (D.D.C. 2013) ...........................................................................
    28

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.,*
    No. 03 Civ. 8909 (RJH), 2003 WL 22889738, 2003 U.S. Dist. LEXIS 21992, at *3-4
    (S.D.N.Y. Dec. 8, 2003).......................................................,.............,...,., .......................
    21

*Virgin Enters. Ltd. v. Nawab,*
    335 F.3d 141 (2d  Cir. 2003) ......................................................................................
    9

*Warner Bros. Records, Inc. v. Payne,*
    No. W- 06-CA-051, 2006 WL 2844415, 2006 U.S. Dist. LEXIS 65765 (W.D. Tex. July 17,
    2006) .......................................................................................................................
    24

*Westchester Legal Services, Inc. v. County of Westchester,*
    607 F. Supp. 1379 (S.D.N.Y. 1985) ...........................................................................
    9

    691 F.3d 275 (2d Cir. 2012), cert. denied, 568 U.S. 1245 (2013) .....................................13,
    14

*WPIX, Inc. v. ivi, Inc.,*
    765 P. Supp. 2d 594  (S.D.N.Y. 2011) ......................................................................
    13

*Yurman Design Inc. v. Chafndom Enters.,*
   No. 99 Civ 9307 (JFK), 1999 U.S. Dist. LEXIS 18382 (S.D.N.Y. Nov. 29, 1999).....................
   9

Statutes
17 U.S.C. § 106....................................................................................................................................
10

17 U.S.C. § 410(c) ................................................................................................................... 10

17 U.S.C. § 502.................................................................................................................... 1, 8

17 U.S.C. § 504(c) ................................................................................................................... 19

17 U.S.C. § 505........................................................................................................................ 19

Other Authorities
C.P.L.R. § 302(a)(1). ..................................................................                                          .. 5

C.P.L.R. § 302(a)(3) ..........................................................................................................................
6

C.P.L.R. § 6201(1)................................................................................................................... 20

C.P.L.R. § 6201(3).................................................................................................................... 20

C.P.L.R. § 6210........................................................................................................................ 21

C.P.L.R. § 6212(a) ...............................................................................................,. .........,.
19

Rules
Fed. R. Civ. P. 26(d) ..........................................................................................................................
22

Fed. R. Civ. P. 65.................................................................................................................8,
21

Pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure, Section 502 of the

U.S. Copyright Act, 17 U.S.C. § 502, and N.Y.C.P.L.R. § 6201, Weijie (hereinafter, "Weijie

or "Plaintiff") by and through its undersigned counsel, hereby moves the Court *ex parte* for a

Temporary Restraining Order, Expedited Discovery Order, Order Authorizing Alternate Service, and Order to Show Cause for Preliminary Injunction, and states as follows:

## INTRODUCTION

Weijie came across the world of e-commerce when he was still in college and truly felt that he had discovered a brand-new path for his future. Dropped out of college in 2015, Weijie opened a e-commerce store in 2016. Founded in 2017, Forever Passion Dream, Inc is Weijie's second company. It's a company with offices in New York that specializes in Baby's apparel, holiday-themed custom designs baby clothes that conducts substantial business in New York and in this District. So many moms and grand-moms love Weijie's designs. They told him it was the cutest holiday outfit they had ever seen, and they shared pictures of their baby girl wearing the outfit on Weijie's Facebook Fan page. It really makes him feel he was doing something great for people. It was one of the happiest times of Weijie's life. Weijie truly believes one quote: **"Design creates culture. Culture shapes values. Values determine the future."** Weijie brings this case against a group of defendants, nearly all of whose identities are unknown to Weijie. In a clear and unambiguous violation of Weijie's rights under the Copyright Act, defendants Does 1-35 (the "Doe Defendants") create, and/or import, distribute, advertise, offer for sale, and sell infringing products bearing Weijie's copyrighted designs to consumers in the United States, primarily through the online marketplaces Amazon.com, Alibaba.com, Aliexpress.com, Shein.com, and Ebay.com (collectively, the "Online Marketplaces"). To date, Weijie has identified the following storefronts used by the Doe Defendants to market their Infringing products: DOES 1-35; Zoetop Business Co., Ltd. d/b/a "SHEIN", SHEIN Distribution Corporation, and ROADGET BUSINESS PTE. LTD. (SINGAPORE PRIVATE COMPANY LIMITED BY SHARES), collectively a **multi-billion dollar** Chinese fast-fashion enterprise operating in China; Zhangjiagang Bai Xuan Import And Export Trade Co., Ltd; MIDA; Tiacham; Shenzhen JiEr Trading Co.,Ltd; Zempertoopa; the Danna Belle Store;    the bilison Store;  Kehen-;  Fragarn;  Gumipy; Xaoxeijuq ;   Pybcvrrd;  Babany Bebe; the bilison Store; the GRNSHTS Store; Aunavey;

Blotona; Kiapeise; Maemukilable; Kgurtagh; The little Girl's store; the Shalofer Store; kidsfashionshop; feikebella; babany; Baby's Boutique Store; Princessgirls; Lishui Fanhua Technology Co., Ltd; F&H Baby Store; YK&Loving Official Store; Hangzhou Lingpai Network Technology Co., Ltd; Prettybaby2020 ("Storefronts"). Storefronts and SHEIN are collectively referred to as Defendants. Weijie does not authorize the sale of Defendants' infringing products.

Defendants advertise, promote, and sell their infringing products at prices substantially below the prices Weijie markets its legitimate products. In so doing, Defendants greatly undercut sales of authorized Weijie products. Many of the infringing products sold by Defendants are low- quality, resulting in substantial damage to Weijie's reputation and brand. Defendants are undoubtedly aware that their activities are illegal, yet they persist in them nonetheless, profiting from their blatantly illegal conduct.

The true names, capacities, and contact information of the Doe Defendants are unknown to Weijie at this time. Weijie believes that expedited discovery will lead to the identification of the Doe Defendants' true names and locations. The Doe Defendants conduct business through one or more of the approximately 45 anonymous storefronts operating on the Online Marketplaces, and are all believed to be based in China.

The Defendants may be working collectively because many of the products that they sell exhibit the same inferior qualities. Further, many of the Storefronts operated by the Doe Defendants offer similar inventories of other products.

To date, Plaintiff has identified numerous products that Defendants are creating, and/or importing, distributing, advertising, offering for sale, and selling in the United States containing pirated copies of several of Weijie copyrighted designs. Weijie holds copyright registrations for the design patterns Defendants have misappropriated in producing their infringing products, as set forth in Exhibit 2 to the Complaint. The infringing products that

Weijie has identified thus far, in all likelihood, are just the tip of the iceberg. Indeed, upon information and belief, the Complaint lists only a mere subset of the products Defendants are selling that infringe Weijie's copyrights, and only some of the storefronts that Defendants use to facilitate their illegal sales of infringing products.

Based on the efforts Defendants have made to conceal their true identities (including the creation of these approximately 45 different anonymous Storefronts to sell the infringing products), it is highly probable that Defendants have infringed Plaintiff's intellectual property rights more pervasively. Given the nature of Defendants' illegal activity, Weijie also has every reason to believe that (a) Defendants will continue to infringe if they are not temporarily restrained and ultimately preliminarily enjoined from doing so by the Court, and (b) Defendants will dissipate or move any assets from their unlawful activity that they have, and that could be used to satisfy or partially satisfy a judgment, if the Court does not restrain them from doing so.

To determine the Doe Defendants' identities and true locations, Weijie requires expedited discovery targeted at obtaining such identifying information. While the sales of the infringing products are believed to run into the millions of dollars, there is every reason to believe that Defendants' infringement is even more pervasive and they will go to great lengths to continue to do so, and will dissipate the assets necessary to satisfy, even in small part, the Court's final judgment.

Accordingly, by this motion, Weijie requests: (1) an order temporarily enjoining any further infringement, restraining the assets in the accounts used by Defendants to receive funds or payments in connection with their illegal scheme, and restraining Defendants' sale of infringing products; (2) leave to serve targeted expedited discovery, including an

inspection of Defendants' inventory of infringing products; (3) an order authorizing service of the Complaint and future filings upon the Defendants by email and/or through the messaging services for the Online Marketplaces; and (4) an order to show cause why a preliminary injunction should not issue prohibiting Defendants from continuing to infringe and restraining Defendants' assets until this

case has been resolved.

## STATEMENT OF FACTS

The facts supporting Plaintiff's requests herein are set forth in the Complaint and the accompanying Declarations of QINMEI YU , dated August 20, 2022. For brevity, those facts are not repeated here.

## ARGUMENT

I.     THIS COURT HAS PERSONAL JURISDICTION OVER THE DEFENDANTS

For a district court to grant a plaintiff injunctive relief under Rule 65 of the Federal Rules of Civil Procedure, the court must have personal jurisdiction over the defendant. Sunward Elecs., Inc. v. McDonald, No. 03-CV-0345, 2003 WL 25719935, 2003 U.S. Dist. LEXIS 28127, *13 (N.D.N.Y Apr. 24, 2003). However, prior to discovery, a plaintiff need only make a prima facie showing of personal jurisdiction. Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998) ("'[P]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ...  legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction.") (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990), cerl. denied, 498 U.S. 854 (1990)).

New York's long-arm statute is satisfied here on multiple grounds, including under § 302(a)(1) of the New York Civil Practice Law and Rules ("C.P.L.R."), which provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or

> through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state ...

C.P.L.R. § 302(a)(1).

Here, the Doe Defendants operate the Storefronts on the Online Marketplaces through which they sell or have sold to customers in the United States, including in New York, infringing products bearing unauthorized copies of Weijie's copyrighted designs. It's a fact that Defendants have personal jurisdiction in New York. *McGraw-Hill Global Educ. Holdings, LLC v. Mathrani,* 295 F. Supp. 3d 404, 410 (S.D.N.Y. 2017) ("This Court need look no further than § 302(a)(1)" to establish personal jurisdiction over defendants accused of copyright infringement related to the sale of products on online marketplaces with sales and shipments to consumers in New York.)

Personal jurisdiction also exists under C.P.L.R. § 302(a)(3), because those Defendants have committed tortious acts of copyright infringement outside the State, which caused and continue to cause injury to Weijie within the State, and those Defendants expected or should reasonably have expected such acts to have consequences in this State and derive substantial revenue from interstate or international commerce. C.P.L.R. § 302(a)(3); *Gucci Am., Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228, 241 (S.D.N.Y. 2010) (finding personal jurisdiction existed pursuant to C.P.L.R. § 302(a)(3) where out-of-state defendants enabled the sale of infringing goods to New York customers); *McGraw-Hill Cos., Inc. v. Ingenium Techs. Corp.,* 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) ("The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held."); *Rogers v. eColor Studio,* No. 11-CV- 4493 (ARR) (RER), 2013 WL 750120, 2013 U.S. Dist. LEXIS 27029, at *6 (E.D.N.Y. Feb. 27, 2013) (personal jurisdiction existed on grounds that "[c]opyright infringement is a commercial tort [a]nd ... the alleged tort was committed ...  in India, where the website was created and maintained [and Defendants] upload[ed the] ...   copyrighted material onto the

internet [thus] Defendants committed a tortious act without New York causing injury ...

within New York"), *adopted by* 2013 U.S. Dist. LEXIS 27029 (E.D.N.Y. Feb. 27, 2013). The

situs of Weijie's injury is New York where Weijie does substantial business. *Buccellati*

*Holding Italia SPA v. Laura Buccellati, LLC,* 935 F. Supp. 2d 615, 625 (S.D.N.Y. 2013)

(holding that "plaintiff [Italian corporation's] allegations demonstrate a tortious act

resulting in an injury in New York, given that [plaintiff] ... conduct[s] business in New York"

and "it is undisputed that New York residents can view Defendants' website containing the

allegedly infringing marks."); *Park West Galleries, Inc. v. Franks,* No. 12 Civ. 3007, 2012

U.S. Dist. LEXIS 86629, *18 (S.D.N.Y. June 20, 2012)

("Because Plaintiff[Michigan corporation] alleges an injury to its business in the form of lost

New York customers and sales, it is free to invoke the jurisdiction of the Court, which

extends *in personam* to Defendants.").

Moreover, Defendants should have reasonably expected their cyber-piracy to have

consequences in New York. Defendants sell infringing products through multinational

online marketplaces, including Amazon.com, the largest online retailer in the world. (Zhou

Decl. $$ 8- 24; Scaccia Decl. $\ 8-12.) All of the Online Marketplaces are continuously

accessible throughout the United States, including to New York residents. These online

marketplaces offer shipping throughout the United States, including to New York.

Therefore, it is reasonably foreseeable that Defendants' copyright infringement would have

consequences in the State of New York, and Defendants derive their revenue from

interstate commerce. *Starmedia Network, Inc. v. Star Media, Inc.,* No. 00 CIV. 4647, 2001

U.S. Dist. LEXIS 4870, *7-8 (S.D.N.Y. Apr. 23, 2001) (holding that

defendant "should have reasonably expected that its infringement of plaintiffs trademark

would have consequences in New York," given that "defendant used its website to attract and service business across the nation, including in New York, and has received substantial revenue from those interstate sales."). Accordingly, the Court has personal jurisdiction over Defendants under

C.P.L.R. § 302(a)(3).

Because the New York long-arm statute does not extend to the limits of due process, a separate due process analysis is unnecessary. *D.H. Blair & Co. v. Goltdiener,* 462 F.3d 95, 105

(2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y.C.P.L.R. § 302(a) meets due process requirements."); *Ingraham v. Carroll,* 687 N.E.2d 1293, 1295 (N.Y. 1997) ("The subdivision 302(a)(3) was not designed to go to the full limits of permissible jurisdiction. The limitations contained in subparagraphs (i) and (ii) were deliberately inserted to keep the provision well within constitutional bounds." (internal quotations and citations omitted)). Nonetheless, minimum contacts in a due process analysis are clearly satisfied in this case. Therefore, asserting personal jurisdiction in the instance case does not offend traditional notions of fair play and substantial justice because Defendants have imported, distributed, advertised, offered for sale and/or sold infringing products nationwide, including in New York, and infringed the registered copyrights of Weijie, causing injury to Weijie in New York. *McGraw-Hill Global Educ. Holdings, LLC,* 295 F. Supp. 3d at 414 (exercising personal jurisdiction over online marketplace seller of infringing products due to contacts with the forum).

## II.   WEIJIE MEETS THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

This Court has the authority to grant temporary, preliminary, and final injunctive relief as it may deem reasonable to prevent or restrain copyright infringement. 17 U.S.C. § 502(a); Fed. R. Civ. P. 65. This Court has granted temporary restraining orders and preliminary injunctions, in a form similar to the relief sought here in similar cases. See, e.g., Pearson Education, Inc. v. Gupta, No. 1:16-cv-04253-LLS, Ex Parte Order (June 8, 2016) (Dkt. No. 4); McGraw-Hill Global Education Holdings, LLC et al. v. Mathrani et al., No. 1:16-cv-08530-WHP, Ex Parte Order (November 2, 2016) (Dkt. 4); Pearson Education, Inc. et al v. Does 1-100, No. 1:17-cv-00203- DAB, Ex Parte Order (January 17, 2017) (Dkt. 3); Pearson Education, Inc. et al v. FBAAZ Corp., No. 1:17-cv-00203-DAB, Ex Parte Order (May 10, 2017) (Dkt. 8.)

In deciding an application for a temporary restraining order or preliminary injunction, courts in the Second Circuit apply the same four-factor analysis, which requires the movant to establish (1) "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation"; (2) that the movant is "likely to suffer irreparable injury in the absence of an injunction"; (3) "the balance of hardships tips in [the movant's] favor"; and (4) the "'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting,* 607 F.3d 68, 74, 79-80 (2d Cir. 2010) (citations omitted); *see also Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 145 (2d Cir. 2003).

### A.   Weijie Is Likely To Succeed on The Merits of Its Claims Against Defendants.

In determining whether a plaintiff has demonstrated a likelihood of success on the merits of the ultimate case, a court is not called upon to decide the full merits of the controversy. The court need only find that the plaintiff has presented a strong *prima facie* case to justify the discretionary issuance of preliminary relief. *J.P. Morgan Sec. v. La.*

*Citizens Prop. Ins. Corp.,* 712

F. Supp. 2d 70, 75-76 (S.D.N.Y. 2010). The movant does not need to prove that success is certain, but only that the probability of prevailing Is better than fifty percent. *BigStar Enlertainment, Inc. v. Next Big Star, Inc.,* 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000).

Moreover, a likelihood of success on the merits on every claim for relief is not required. Instead, the movant need only show a likelihood of success on the merits of at least one of its claims. *Yurman Design Inc. v. Chaindom Enters.,* No. 99 Civ. 9307 (JFK), 1999 U.S. Dist. LEXIS 18382, at *14 (S.D.N.Y. Nov. 29, 1999) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims.") (internal citations omitted); *Westchesler Legal Services, Inc. v. County of Weslchester,* 607 F. Supp. 1379, 1382 (S.D.N.Y. 1985) (same).

For this reason, this motion focuses on Weijie's copyright infringement claims against Defendants even though Weijie is likely to prevail on each of its claims.

### 1.    Copyright Infringement Under 17 U.S.C. § **501.**

There is no question that Weijie is likely to succeed on its copyright infringement claims against Defendants. Weijie holds valid, registered copyrights.

### B.    Weijie Will Suffer Irreparable Harm if the Court Does Not Grant Immediate Relief.

Weijie spent eight years on his commercial art business since 2015. In 2017, his store made almost 1million sales. However, he still can not afford to buy a house because of the unfair competion violated by the infringer . He has to be a part driver to support his

business in 2022. Weijie has suffered and will continue to suffer irreparable harm to its legal

interest due to Defendants' acts of copyright infringement unless this Court issues a

temporary restraining order and preliminary injunction pending the resolution of this case.

The irreparable harm to Weijie cannot be fully remedied after a final adjudication, whether

by damages or a permanent injunction. Weijie has invested significant effort in building the

reputation of quality of its products bearing the its copyrighted designs. *Broad Music, Inc.*

*v. PAMDH Enters., Inc.,* No. 13 Civ. 2255 (KMW), 2014 WL 2781846, 2014 U.S. Dist.

LEXIS 84409, at *13-14 (S.D.N.Y. June 19, 2014); *see also Complex Sys., Inc. v. ABN Amro*

*Bank N.V.,* No. 08 Civ. 7497 (KBF), 2014 WL 1883474, 2014 U.S. Dist. LEXIS 64467, at

*36 (S.D.N.Y. May 9, 2014);

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.,* 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011).
Here, Weijie's losses will be very difficult to measure. While Defendants' sales

might be tracked through the Online Marketplaces, those sales do not quantify the

impact of Defendants' illegal activities on consumer reaction to the products containing the

Copyrighted Works, or the impact on market prices. Allowing Defendants to continue to

copy and/or distribute pirated copies of Weijie's copyrighted designs could lead consumers

to believe that anyone can copy and distribute Weijie's copyrighted designs, including

consumers.


Based on the foregoing, these facts weigh in favor of granting temporary and preliminary

injunctive relief.

C.     **The Balance of Hardships Weighs in Weijie's Favor**

When balancing the hardships, the issue is whether Weijie would suffer decidedly greater harm from the denial of injunctive relief than the Defendants would suffer from granting the relief. *TrueEX, LLC v. MarkitSEL V Ltd.*, No. 17-cv-3400 (LAK), 2017 WL 3084422, 2017 U.S. Dist.

LEXIS 112396, at *36-37 (S.D.N.Y. July 18, 2017). In contrast to the irreparable harm Weijie would suffer absent a temporary restraining order and preliminary injunction, Defendants would suffer far less injury from the issuance of the same. Any claim of hardship by Defendants would be particularly ill-founded because they are willful infringers.

"A willful infringer should not by the extent of his investment be allowed to gain immunity from the injunctive remedy." *L.C. Page & Co. v. Fox Film Corp.*, 83 F.2d 196, 200 (2d Cir. 1936). "[I]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012), cert. denied, 568 U.S. 1245 (2013) (quoting *WPIX, Inc. v. ivi, Inc.*, 765 F. Supp. 2d 594, 621 (S.D.N.Y. 2011)); *see also North Face Apparel Corp. v. Moler*, No. 12 Civ. 6688 (JGK) (GWG), 2015 WL 4385626, 2015 U.S. Dist. LEXIS 93133, at *24 (S.D.N.Y. July 16, 2015) (enjoining sellers of counterfeit goods).

### D.     The Injunctive Relief Sought Dy Weijie Serves the Public Interest.

Temporarily restraining and prelIminarily enjoining Defendants in this case serves the public interest. Many of the infringing products distributed by Defendants are of poor quality and may not meet the rigorous consumer product safety standards that Weijie's ensures its products meet. Because Weijie's products are designed and manufactured to ensure they cannot harm users — in this case, children — failure to include these safety standards puts the public in danger. Here, the public has an interest in being able to rely on the

quality of the products bearing Weijie's copyrighted designs." *WPIX*, 691 F.3d at 287.

"Inadequate protections for copyright owners can threaten the very store of knowledge to

~~be accessed; encouraging the production of creative work thus ultimately serves the~~

public's interest in promoting the accessibility of such works." *Id.* Accordingly, this factor,

like the others, favors injunctive relief, and Weijie has met its burden to show that

injunctive relief temporarily and preliminary enjoining Defendants from further infringing

Plaintiff's copyrights is warranted.

**E.    Weijie's Request for Injunctive Relief Is Timely.**

Given the urgency of this matter and Weijie's need to seek prompt relief, Weijie has

filed its request for a temporary restraining order and preliminary injunction at the

commencement of its action against Defendants.

Under the circumstances, WEIJIE's actions have been both reasonable and timely.

*CJ Prods. LLC,* F.Supp. 2d at 162 ("Any delay due to a good faith investigation, or by virtue of

failure to realize the extent of the infringement, does not defeat equitable relief"); *King v.

Innovation Books,* 976 F.2d 824, 831 (2d Cir. 1992) (eight months of trying to stop

infringing activity reasonable under the circumstances and contrast with those in which

delay negates the presumption of irreparable harm); ¹ *Ideavillage Prods. Corp. v. Bling

Boutique Store,* No. 16-CV-9039 (KMW), 2017 U.S. Dist. LEXIS 61189, at *14 (S.D.N.Y.

Apr. 21, 2017) ("Various courts in this Circuit have found that delay [in asserting intellectual

property rights] was justified where ... the plaintiff made a good faith effort to investigate

the alleged infringement").

**III.    Weijie IS ENTITLED TO AN ORDER PREVENTING THE TRANSFER
OF DEFENDANTS' ASSETS**

It is well-settled that a federal district court may issue injunctive relief to preserve assets as security for a potential monetary judgment. It is clear that one is warranted in this case.

## A.   The Court Has Authority to Freeze Defendants' Assets Under Federal Law and Through Its Equitable Powers.

This Court has ample authority under the Federal Rules of Civil Procedure to attached Defendants' assets as requested hereunder. The Court may freeze Defendants' assets for a potential judgment through a Rule 65 preliminary injunction. *See, e.g., Republic of Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir. 1986) (court prevents transfer of property that would place them out of reach of judgment collection); *Ideavillage Prods. Corp. v. Bling Boutique Store,* No. 16-CV-9039 (KMW), 2017 US Dist. LEXIS 61189, at *14-15 (S.D.N.Y. Apr. 21, 2017) ("the Second Circuit

has held that a district court needs only personal jurisdiction over a defendant to restrain or freeze that defendant's property before trial, whether that property is within the United States or outside."

' Situations where delay in enforcing intellectual property rights may negate a finding of irreparable harm often involve plaintiffs who takes no action relating to the infringing activity during the time period between learning of the infringement and filing for injunctive relief. *See e.g., Citybank, N.A. v. Citylrust,* 756 F.2d 273, 276-77 (2d Cir. 1985) (irreparable harm presumption negated where plaintiff made no effort to gather information about defendant's alleged trademark infringement or object to it during the nine-month period before filing suit); *Majorica, S.A. v. R.H. Macy & Co.,* 762 F.2d 7, 8 (2d Cir. 1985) (irreparable harm negated where plaintiff delayed for "several years" in bringing trade name suit despite awareness of competitor's allegedly infringing conduct, made no complaint to competitor during that time, and did not move for preliminary injunction until seven months after suit filed). These situations are clearly distinguishable from the instant case.

(citing *Gucci Am. v. Bank of China,* 768 F.3d 122, 129 (2d Cir. 2014)); *Quantum Corporate funding, Itd. v. Assist You Home Health Care Services of Va.,* 144 F. Supp. 2d 241, 248 (S.D.N.Y. 2001) ("Preliminary injunctions are ... appropriate to thwart a defendant from making a judgment uncollectible."); *Mason Tenders Dist. Council Pension Fund v. Messera,* No. 95 Civ. 9341 (RWS), 1997 WL 223077, 1997 U.S. Dist. LEXIS 5931, at *13 (S.D.N.Y. May 1, 1997) ("[T]he United States Supreme Court and the Second Circuit have made Rule 65 available to secure assets for the ultimate judgment."); *cf. In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir. 1985) ("[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transfer[ring their] assets ....") (quotations and citations omitted).

In addition to the Court's authority under the Federal Rules of Civil Procedure, the Court has a "great deal of discretion" in "fashioning a remedy pursuant to its inherent equitable powers." *Pure Power Boot Camp v. Warrior Fitness Boot Camp, LLC,* 587 F. Supp. 2d 548, 570 (S.D.N.Y. 2008). "[A] preliminary asset freeze is authorized by the district court's inherent equitable power to issue provisional rCmedies ancillary to its authority to provide final equitable relief. Where profits are available as a final remedy — as they are under 17 U.S.C. § 504 — a preliminary asset freeze is an appropriate provisional remedy." *Lions Gate Films, Inc. v. Doe,* No. 2:14-cv-6033-MMM-AGRx,

2014 WL 3895240, 2014 U.S. Dist. LEXIS 110032, at *16-17

(C.D. Cal. Aug. 18, 2014) (internal quotations and citations omitted). Here, Weijie seeks an equitable accounting and disgorgement of Defendants' illicit profits under the Copyright Act. Therefore, the Court may exercise its equitable authority to preserve the status quo and maintain its ability to provide an equitable remedy to Weijie. *See Datatech Enters. LLC v. FF Magnat*

*LU.,* No. C 12-4500 CRB, 2012 WL 4068624, 2012 U.S. Dist. LEXIS 131711, at *11 (N.D. Cal. Sept. 14, 2012).

Weijie has already established that it is likely to succeed on the merits. Further, irreparable harm exists where "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999). Accordingly, a demonstration of a defendant's "intent to frustrate any judgment on the merits" qualifies as a showing of "irreparable harm." *Sea Carriers Corp. v. Empire Programs, Inc.,* No. 04 Civ. 7395 (RWS), 2006 WL 3354139, 2006 U.S. Dist. LEXIS 83843, at *12-13

(S.D.N.Y. Nov. 20, 2006); *see also Algonquin Power Corp., Inc. v. Trafalgar Power Inc.,* No. 5:00-CV-1246 (NPM/DEP), 2000 WL 33963085, 2000 U.S. Dist. LEXIS 20331, at *57

(N.D.N.Y. Nov. 8, 2000) ("[D]emonstration of intent to frustrate a judgment will be found to satisfy the requirement of a showing of irreparable harm.") (citing *Signal Capital Corp. v. Frank,* 895 F. Supp. 62, 64 (S.D.N.Y.1995)); *Motorola, Inc. v. Abeckaser,* No. 07-CV-3963 (CPS)(SMG), 2009 WL 1362833, 2009 U.S. Dist. LEXIS 40660, at *12-13

("[A] plaintiff s

showing that a defendant's actions are likely to render a judgment uncollectible qualifies

as a showing of irreparable harm."); *Experience Hendrix, LLC v. Chalpin,* 461 F. Supp. 2d

165, 169- 70 (S.D.N.Y. 2006) (irreparable injury found where "there is substantial reason

to believe that defendants, unless enjoined, will continue to attempt to frustrate plaintiff s

efforts to collect the judgment").

Here, there is overwhelming evidence that Defendants will evade the enforcement of

any potential judgment issued in this case. Defendants have intentionally and deliberately

set up over approximately 45 anonymous Storefronts to further their infringing efforts, and

have escalated their efforts to misappropriate Weijie's intellectual property after being

notified of their infringement. (Zhou Decl. $$ 22-24.) Defendants are not businesses that

would have easily identifiable assets which may be used to satisfy a judgment. Instead,

due their blatant infringement, there is a strong indication that Defendants will empty or

move accounts in an effort to avoid paying a judgment. *MfCroSOft Corp. v. Jun Yan,* No.

3:10-cv-162 (VLB), 2010

U.S. Dist. LEXIS 14934, at *7 (D. Conn. Feb. 18, 2010) (granting temporary restraining

order and preliminary injunction freezing assets where defendants operated online piracy

operation, used multiple and false contact information, switched ISPs, and used

"WHOIS protection services" to frustrate detection and avoid compliance with copyright

laws); *Elsevier, Inc. v. Does* 7-/fi, No. 16 Civ. 1245 (RA), Ex Parte Order (Feb. 2, 2016)

(Dkt. No. 13) (finding that use of aliases, among other measures, to operate their allegedly

infringing enterprise demonstrates the likelihood that, if defendants were to receive

advance notice of an injunction application, "Defendants could moot Plaintiffs' ultimate

relief by moving their assets beyond the reach of the Court").

The balance of hardships and public policy considerations overwhelmingly favor Weijie. A judgment of some amount is more than likely to be entered in Weijie's favor, and Weijie bears a significant risk that Defendants' assets will prove inadequate to satisfy such a judgment. *Serio v. Black, Davis & Shue Agency, Inc.,* No. 05 Civ. 15 (MHD), 2005 WL 3642217, 2005 U.S. Dist. LEXIS 39018, at *61 (S.D.N.Y. Dec. 30, 2005). Without a freeze of the Defendants' assets, Weijie would suffer a hardship because it is at risk of "not be[ing] paid monies that ... are justly due and owed" as compensation for the egregious harm that Defendants' infringing conduct has caused Weijie. *Quantum,* 144 F. Supp. 2d at 249. Defendants, on the other hand, will suffer no cognizable hardship because they have no right to use the profits of an infringing enterprise to continue supporting their unlawful activities or for personal gain. There is absolutely no possible public interest that should allow Defendants to continue causing and profiting from willful and intentional infringement.

**B.      The Court Also Has Authority to Freeze Defendants' Assets Under State Law.**

In addition to the federal rules and its equitable powers, this Court may also freeze Defendants' assets pursuant to C.P.L.R. § 6212(a). Rule 64 of the Federal Rules of Civil Procedure states that, "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. New York law under C.P.L.R. § 6212(a) provides that a plaintiff can obtain prejudgment attachment if it can show "that there is a cause of action, that it is probable that the plaintiff

will succeed on the merits, that one or more grounds for attachment provided in Section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." C.P.L.R. §6212(a).

As established above, Weijie is likely to succeed on the merits of its copyright infringement claim against Defendants. Weijie is entitled to substantial statutory damages for Defendants' pirating of Weijie's two Copyrighted Works. *See* 17 U.S.C. § 504(c) (providing for statutory damages of not less than $750 per infringed work and up to $150,000 per work for willful infringement). Weijie is also entitled to recover its attorneys' fees for Defendants' willful copyright infringement under the Copyright Act as well as punitive damages for common law unfair competition. 17 U.S.C. § 505; *Johnson & Johnson v. Guflin Chung Fat Biotech Co.,* No. 07-CV-1295, 2018 U.S. Dist. LEXIS 8399, *28 (E.D.N.Y. Jan. 16, 2018) ("Punitive damages are

available   as a remedy for common law unfair competition."). On the other hand, Defendants. have no known potential counterclaims to assert against Weijie, therefore the requirement that the amount demanded exceeds all known counterclaims is met. C.P.L.R. § 6212(a).

C.P.L.R. §§ 6201(1) and (3) also provide grounds for an attachment in this case.

Section 6201(1) provides for attachment where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." C.P.L.R. § 6201(1). Section 6201(3) provides grounds for an attachment where the defendant, "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff s favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts ...." C.P.L.R. § 6201(3).

In this case, it is unclear whether Defendants can be said to be domiciled or reside in New York, as they have either made purposeful attempts to conceal their locations or they appear to reside in China. Defendants deliberately infringe Weijie's copyrighted designs and go to great lengths to do so anonymously. (Scaccia Decl. $ 12.) Once given notice, Defendants can be expected to make it difficult to satisfy any judgment. Therefore, attachment is appropriate under

C.P.L.R. §§ 6201(1) and (3). *See ITC Entertainment, Lld. v. Nelson Film Partners,* 714 F.2d 217, 221-22 (2d Cir. 1983) (upholding an order of attachment under § 6201(1) based on questionable business practices); *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 327 (S.D.N.Y. 2005) (granting plaintiffs motion for prejudgment attachment under C.P.L.R. 6201(1) where defendants are "foreign individuals and corporations who have both incentive and capacity to hide their assets"); *Graubard Mollen Dannelt & Horowitz v. Kostantinides,* 709 F. Supp. 428, 432 (S.D.N.Y. 1989) (finding attachment under C.P.L.R. § 6201(1) appropriate where plaintiff sought to attach defendant's bank account, because "[t]hese accounts, by nature are liquid and can be easily transferred from the jurisdiction by a simple telephone call"); eJ *JSC Foreign Econ. Ass'n*

*Technoslroyexport v. Int'l Dev. & Trade Servs., Inc.,* 306 F. Supp. 2d 482, 487 (S.D.N.Y. 2004) ("Because direct evidence of an intent to defraud or to frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201(3) is usually inferred from the circumstances.").

### C.  *Ex Parte* Relief Should Be Granted In This Case

If Defendants receive advance notice of Weijie's application for a temporary restraining order to enjoin them from further infringing activity and attaching Defendants'

assets, Defendants are also likely to disregard the Court's order and will also have the opportunity to make some of the relief sought by Weijie moot, by moving or hiding the ~~infringing goods, documents related to the creation of the infringing goods, and related~~ materials within the time needed for a hearing, and by moving their assets to another account beyond the reach of this Court. Accordingly, based on the circumstances of this case, Defendants' assets associated with their illegal activities should be temporarily restrained or attached on an *ex parte* basis.

Rule 65 of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without written or oral notice if, by affidavit or verified complaint, the applicant shows that "immediate and irreparable injury, loss, or damage will result ... before the adverse party can be heard in opposition ...." Fed. R. Civ. P. 65(b); *see also U2 Home Enlm't, Inc. v. Bowery Music City, Inc.,* No. 03 Civ. 8909 (RJH), 2003 WL 22889738, 2003 U.S. Dist. LEXIS 21992, at *3-4 (S.D.N.Y. Dec. 8, 2003). New York law also grants the Court the authority to enter a temporary order of attachment without notice. C.P.L.R. § 6210 ("Upon a motion on notice for an order of attachment, the court may, without notice to the defendant, grant a temporary restraining order prohibiting the transfer of assets by a garnishee as provided in subdivision (b) of section 6214."); *see also Libancell S.A.L. v. Republic of Leb.,* No. 06 Civ. 2765 (HB), 2006 WL 1321328, 2006 U.S. Dist. LEXIS 29442, at *5-6 (S.D.N.Y. May 16, 2006) ("New York allows for the entry of an *ex parte* temporary restraining order pending the outcome of a motion on notice for an order of attachment.").

**D.     The Court Should Not Require Weijie To Post a Bond or**

**Alternatively, Require Only a Minimal Bond.**

Rule 65(c) of the Federal Rules of Civil Procedure invests the district court with wide discretion to determine the amount, if any, of security required for injunctive relief. *Doctor 's Assocs. v. Distajo,* 107 F.3d 126, 136 (2d Cir. 1997). Namely, the court may "dispense with the bond requirement 'where there has been no proof of likelihood of harm.'" *See id.* (quoting *Doctor 's Assocs. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996)); *see also DeWitt Stern Group, Inc. v. Eisenberg,* No. 13 Civ. 3060 (RWS), 2013 WL 2420835, 2013 U.S. Dist. LEXIS 78598, at *16 (S.D.N.Y.

June 4, 2013) (finding bond requirement unnecessary).

Weijie respectfully requests that that the Court exercise its discretion to dispense with the filing of a bond in this case. As discussed above, there is no realistic likelihood of harm to Defendants in this case because there is no evidence that Weijie's requested injunction will cause harm, but instead will stop Defendants' unlawful conduct. If a bond is required, Weijie requests that the amount set be minimal.

## IV.   WEIJIE IS ENTITLED TO CONDUCT EXPEDITED DISCOVERY

The Court has authority to grant expedited discovery in support of Weijie's request for injunctive relief. Fed. R. Civ. P. 26(d) advisory committee's note to 1993 amendment (expedited discovery "will be appropriate in some cases, such as those involving requests for a preliminary injunction"). In the instant case, Weijie has two requests for expedited discovery. First, Weijie seeks discovery to obtain information from the Online Marketplaces that will help it identify and locate the Doe Defendants. Second, Plaintiff seeks the ability to inspect Defendants' inventory of infringing products held by Amazon.com and any of the other Online Marketplaces that maintain inventory or facilitate the distribution of those

products, in order to prevent any additional infringing products bearing Weijie's copyrighted designs from being sold into those marketplaces. Weijie's requests are targeted to obtaining the evidence for a preliminary injunction hearing, minimizing further distribution of infringing products within the Online Marketplaces, and preventing Defendants from frustrating the Court's ability to provide an appropriate remedy.

Courts in this district apply a "flexible standard of reasonableness and good cause" to determine whether to grant a motion for expedited discovery prior to a Rule 26(f) conference. *Digital Sin, Inc. v. Does 1-176,* 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting *Ayyash v. Bank Al-Madina,* 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)). Expedited discovery "is routinely granted in actions involving infringement and unfair competition." *Benham Jewelry Corp. v. Aron Basha Corp.,* No. 97 Civ. 3841 (RWS), 1997 WL 639037, 1997 U.S. Dist. LEXIS 15957, at *58 (S.D.N.Y. Oct. 14, 1997) (citing cases); *Arista Records v. Doe,* 604 F.3d at 117-24 (affirming denial of motion to quash subpoena served on ISP to disclose identities of Internet users allegedly committing copyright infringement); *Living Scriptures, Inc.* v. Doe, No. 1:10 cv 0182 DB, 2010 WL 4687679, 2010 U.S. Dist. LEXIS 119968, at *4 (D. Utah Nov. 10, 2010) (granting ex *parle* motion for expedited discovery from PayPal in copyright infringement case). Weijie's limited requests satisfy the flexible standard of reasonableness and good cause.

Without the ability to discover the true names and locations of the Doe Defendants, Weijie is unable to name and serve the proper defendants in this case and will ultimately be unable to litigate its claims against these Defendants. Accordingly, Weijie has a substantial need for the discovery. Defendants must also not be allowed to introduce additional infringing products into the marketplace. Weijie is best positioned to identify whatever infringing products are currently within Defendants' inventory at Amazon.com and other Online Marketplaces. The requested inspection will assist Weijie in removing

any infringing products from the marketplace, as well as present a more complete record to this Court in connection with a preliminary injunction request.

Because Defendants' illegal activities occur predominantly behind closed doors, it may be difficult for Weijie to create a more complete record for preliminary injunctive relief in the absence of such discovery. *Twentieth Century Fox Film Corp. v. Mow Trading* Corp., 749 Y. Supp. 473, 475 (S.D.N.Y. 1990) (granting expedited discovery 1n infringement action because "[i]nquiry ... on an expedited basis may very well lead to evidence of continuing infringement by this defendant or others; it may also lead to the discovery of future plans to infringe or the discovery of additional infringing merchandise"); *Warner Bros. Records, Inc. v. Payne*, No. W- 06-CA-051, 2006 WL 2844415, 2006 U.S. Dist. LEXIS 65765, at *10 (W.D. Tex. July 17, 2006)

("[P]iracy typically takes place behind closed doors and beyond the watchful eyes of a copyright holder."). Further, because Defendants' sale of infringing products is ongoing, it is safe to conclude that the products which Weijie seeks to inspect could likely evade normal discovery and disappear into the marketplace. *Elite Licensfng, Inc. W. Thomas Plastics, Inc.*, 250 F. Supp. 2d 372, 381 (S.D.N.Y. 2003) (granting plaintiff's application for expedited discovery, allowing plaintiff to inspect the allegedly infringing products); *Twentieth Century Fox*, 749 F. Supp. at

475 (permitting expedited discovery to identify the sources and quantity of infringing merchandise because such discovery may lead to "evidence of continuing infringement by this defendant or others" as well as the "discovery of future plans to infringe or the discovery of additional infringing merchandise"); *Dell Inc. v. BelgiumDomains, LLC*, No. 07-22674 CIV

JORDAN, 2007 WL 6862341, 2007 U.S. Dist. LEXIS 98651, at *28-29 (S.D. Fla. Nov. 21, 2007)

(court grants plaintiffs expedited discovery to seek discovery from multiple third parties in order to identify defendants and learn the scope of their operations); *TracFone Wireless, Inc. v. Holden Prop. Servs., LLC,* 299 F.R.D. 692, 694 (S.D. Fla. 2014) (finding good cause to grant plaintiff expedited discovery to seek discovery from third parties to learn the full extent of the nature and scope of defendants' alleged ongoing unlawful conduct). The same situation applies here.

Accordingly, Weijie meets all the factors for immediate, limited discovery to identify Defendants, including their names, aliases, contact information (addresses, emails, telephone numbers), and the financial accounts linked to their illegal activity.

## V.   WEIJIE IS ENTITLED TO AN ORDER AUTHORIZING SERVICE OF PROCESS BY EMAIL ON THE DOE DEFENDANTS AND THE NAMED DEFENDANTS LOCATED IN CHINA

This Court may authorize Weijie to use alternate service under the applicable federal and New York rules. Rule 4(e)(1) of the Federal Rules of Civil Procedure allows for service on an individual in the United States according to "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." If the Doe Defendants are located in the United States, New York's service of process rules apply. Alternatively, if the Doe Defendants are located outside the United States, Federal Rule of Civil Procedure 4(f) applies. Applying either New York law for the

Doe Defendants located in the United States or Rule 4(f) of the Federal Rules of Civil Procedure for the Doe Defendants located abroad, service by email is available and within this Court's discretion. Service by email is also available for the Defendants based in China under Rule 4(f) of the Federal Rules of Civil Procedure.

The Doe Defendants operate and conduct an international operation that infringes Weijie's copyrights. Weijie does not currently know where the Doe Defendants reside because they have gone to great lengths to conceal their locations. Although Weijie has obtained mailing addresses in China for certain Defendants based on information listed on Online Marketplaces or the unlawful misappropriation of Weijie's copyrighted design in a trademark application, these addresses may not lead to the true locations of the Doe Defendants or the other Defendants, and/or their operations. Although the Doe Defendants have hidden behind anonymous storefront names, identities and locations, the Doe Defendants clearly use email regularly to facilitate their business, because they operate online storefronts with the Online Marketplaces.

The Online Marketplaces will have their email addresses to facilitate payments for their infringing products. In fact, Named Defendant Deng Kai has communicated with Amazon and Weijie through messaging services and email to contest Weijie's takedown notices. Under these circumstances, service of process by email is appropriate.

Regarding the Defendants located in China, service of process by email is also the most effective and reliable method of notifying them of the instant suit because these defendants are e- commerce businesses that fulfill orders through numerous storefronts operating on global e- commerce platforms.A.C.P.L.R. § 308 Authorizes Alternate Service on Individuals in the United

States.

C.P.L.R § 308(5) allows for service "in such a manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Paragraphs one, two, and four of § 308 all require that a plaintiff know the precise whereabouts or home or business address of a defendant. However, for the reasons already discussed above, Weijie does not have this Information for nearly all the Defendants. Thus, service via §308(1),

(2), or (4) is impracticable in this case, and the Court may order service of process via email as an alternate method. Indeed, courts in New York have authorized service of process by email where service by traditional methods was impracticable. *See, e.g., Safadjou v. Mohammadi,* 964 N.Y S.2d 801, 803-04 (N.Y. App. Div. 2013) (noting that both New York courts and federal courts have authorized email service of process as an appropriate method and affirming the trial court's order allowing service upon defCndant via email).

### B. Rule 4(f)(3) of the Federal Rule of Civil Procedure Authorizes Alternate Service on Individuals in a Foreign Country.

kule 4(f)(3) of the Federal Rule of Civil Procedure allows the Court to authorize service of process by any "means not prohibited by international agreement as may be directed by the court," so long as the alternative method of service authorized by the Court is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Philip Morris USA Inc. v. Veles Ltd.,* No. 06 CV 2988 (GBD), 2007 WL 725412, 2007 U.S. Dist. LEXIS 19780, at *5-8 (S.D.N.Y. Mar. 13, 2007) (internal quotations omitted); *see also RSM Prod. Corp. v. Fridman,* No. 06 Civ.

11512 (DLC), 2007 WL 1515068, 2007 U.S. Dist. LEXIS 37713, at *3 (S.D.N.Y. May 24,

2007) ("The

decision whether to allow alternative methods of serving process ... is committed to the

sound discretion of the district court.") (citation and internal quotation marks omitted).

Alternative service under Rule 4(I)(3) need not be the "last resort nor extraordinary

relief. Alternative service is merely one means among several which enables service of

process on an international defendant." *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE),

2013 WL 841037, 2013 U.S. Dist. LEXIS 31969, at *6-7 (S.D.N.Y. Mar. 7, 2013) (citing

*Madu, Edozie & Madu,*

*P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 115 (S.D.N.Y. 2010); *see also See Rio*

*Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1015 (9th Cir. 2002); *United States ex*

*rel. Barko v.*

*Halliburton Co.,* 952 F. Supp. 2d 108, 116 (D.D.C. 2013). In fact, a plaintiff is not required

to attempt service through other means provided under Rule 4(f) before the Court may order

service under Rule 4(f)(3). Rio *Props.*, 284 F.3d at 1014-15; *PCCare247,* 2013 U.S. Dist.

LEXIS 31969, at *8. Alternative service of process by email is proper where, as here, the

proposed method of service is not prohibited by international agreement and due to the

nature of the defendants' business, makes the most sense because it is the most likely method

of service to provide prompt, actual notice of the claims. *See Rio Props.,* 284 F.3d at

1017-18 ("[W]hen faced with an international e- business scofflaw, playing hide-and-seek

with the federal court, email may be the

only means of effecting service of process").

        **1.**    **Service of Process by Email on the Doe Defendants and**

**Defendants Located in China Is Not Prohibited by International Agreement.**

The Doe Defendants' true addresses are unknown. The Hague Convention on

Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters

(the "Hague Convention") does not apply in cases where the address of the person to be

served is not known to the party serving process. Hague Convention Art. 1, Nov. 15, 1965,

20 U.S.T. 361; *see also*

*Prediction Co. v. Rajgarhia,* No. 09 Civ. 7459 (SAS), 2010 WL 1050307, 2010 U.S. Dist.

LEXIS 26536, at *5 (S.D.N.Y. Mar. 22, 2010) ("[I]t is worth observing the inapplicability of

the Hague Convention ... because [defendant's] address is not known to [plaintiffs.")； *Philip*

*Morris,* 2007

U.S. Dist. LEXIS 19780, at *2 (email service authorized and the Hague Convention did not

apply because, despite physical addresses having been provided to defendants' domain

registrars, the actual addresses could not be confirmed as valid).

In the absence of an international agreement, the Court should look to alternative

methods of services under Rule 4(f)(3) of the Federal Rules of Civil Procedure, so long as

the method is directed by the Court and comports with constitutional notions of due

process. *See Rio Props.* 284 F.3d at 1016; *PCCare247 Inc.,* 2013 U.S. Dist. LEXIS 31969,

at *11; *Prediction Co,* 2010

U.S. Dist. LEXIS 26536, at *3.

In addition, although The Hague Convention would apply with respect to service on

the Named Defendants located in China, The Hague Convention does not prohibit service

by email, even where the country in which defendants are located has objected to specific

forms of service permitted by Article 10 of The Hague Convention, such as postal mail. *Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 331 (S.D.N.Y. Nov. 27, 2015) ("China's objection to service by postal mail does not cover service by email, and these forms of communication differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked."); *Gurung v. Malhotra,* 279 F.R.D. 215, 219 (S.D.N.Y. 2011) (allowing service on defendants in India by electronic mail because India's "objection to service through postal channels does not amount to an express rejection of service via electronic mail.").

### 2.   Service of Process by Email Is Reasonably Calculated to Provide Notice to the Doe Defendants and the Defendants in China.

"By design, Rule 4(f)(3) was adopted in order to provide flexibility and discretion to the federal courts in dealing with questions of alternative methods of service of process in foreign countries." *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *8 (internal quotations and citation omitted). "Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts." *Broadfoot v. Dfaz (In re International Telemedia Assocs.),* 245 B.R. 713, 720 (Bankr. N.D. Ga. 2000). Thus, courts have fashioned a variety of different methods of service, including service by email. *See, e.g., PCCare247,* 2013

U.S. Dist. LEXIS 31969, at *18-20 (allowing service by email and Facebook); *Prediction Co.,*

2010 U.S. Dist. LEXIS 26536, at *1-5 (allowing service by email address previously used by

defendant to communicate with plaintiff); *Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at

*9-10 (allowing service by email and fax).

Service by email on a defendant engaged in an online operation is appropriate and constitutionally acceptable in a case such as this where the plaintiff cannot personally serve certain defendants at a physical address and email is the most effective means of providing the defendant with notice of the action. *See Philip Morris,* 2007 U.S. Dist. LEXIS 19780, at *9 (finding that service by email was appropriate where, as here, defendants "conduct business extensively, if not exclusively, through their Internet websites and correspond regularly with customers via email"); *McCluskey v. Bedford High Sch.,* No. 2:09-14345, 2010 WL 2696599, 2010 U.S. Dist. LEXIS 62608, at *9-10 (E.D. Mich. June 24, 2010) (concluding that service via email was appropriate where the defendants relied on an email address to conduct their business); *Elcometer, Inc. v. TQC-USA, Inc.,* No. 12-cv-14628, 2013 WL 592660, 2013 U.S. Dist. LEXIS 19874, at *7 (E.D. Mich. Feb. 14, 2013) (same); *Gaffigan v. Doe,* 689 F. Supp. 2d 1332, 1342 (S.D. Fla. 2009) (finding service by email appropriate where defendants used email to confirm orders placed on their websites); *Microsoft Corp. v. Doe,* No. 12-CV-1335 (SJ) (RLM), 2012 U.S. Dist. LEXIS 162122, at *8 (E.D.N.Y. Nov. 13, 2012) (allowing service of process by email where defendants remained anonymous and concealed their locations, but responded to emails).

Here, email service has the greatest likelihood of reaching online merchants like the Doe Defendants here who are adept at hiding their identity and location. *See Broadfoot,* 245 B.R. at 722 (authorizing email and fax service and noting, "[a] defendant should not be allowed to evade service by confining himself to modern technological methods of

communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party."). Serving the Doe Defendants by email will satisfy due process by apprising them of the action and giving them the opportunity to answer Weijie's claims.

Similarly, email service is also the best way to notify the other Defendants of this lawsuit. As e-commerce businesses that fulfill orders for products through numerous storefronts operating on global e-commerce platforms, these defendants "presumably rel[y]at least partially on contact [their e-mail addresses] to conduct overseas business, and it is reasonable to expect [these defendants] to learn of the suit against it through th[ese] email address[es]." *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015).

## CONCLUSION

Based on the foregoing, Weijie respectfully requests that the Court grant all of the relief requested herein.

Dated: August 20.2022

Weijie Weng

Forever Passion Dream,Inc
11430 DALIAN CT  2nd Floor
College Point NY 11356
www.ilove-mama.com
facebook.com/foreverilovemama
foyuyu22@gmail.com
babanycopyright@outlook.com