**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WEIJIE WENG,

                Plaintiff,

vs.

DOES 1-35; ZOETOP BUSINESS CO., LIMITED;
SHEIN DISTRIBUTION CORPORATION;
ROADGET BUSINESS PTE. LTD;
ZHANGJIAGANG BAI XUAN IMPORT AND
EXPORT TRADE CO., LTD; MIDA; TIACHAM;
SHENZHEN JIER TRADING CO., LTD;
ZEMPERTOOPA; THE DANNA BELLE STORE;
THE BILISON STORE; KEHEN; FRAGARN;
GUMIPY; XAOXEIJUQ ; PYBCVRRD;
BABANY BEBE; THE BILISON STORE; THE
GRNSHTS STORE; AUNAVEY; BLOTONA;
KIAPEISE; MAEMUKILABLE; KGURTAGH;
THE LITTLE GIRL'S STORE; THE SHALOFER
STORE; KIDSFASHIONSHOP; FEIKEBELLA;
BABANY; BABY'S BOUTIQUE STORE;
PRINCESSGIRLS; LISHUI FANHUA
TECHNOLOGY CO., LTD; F&H BABY STORE;
YK&LOVING OFFICIAL STORE; HANGZHOU
LINGPAI NETWORK TECHNOLOGY CO.,
LTD; and PRETTYBABY2020,

                Defendants.

Case No.  22-cv-7082 (JPO)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
### ZOETOP BUSINESS CO., LTD., SHEIN DISTRIBUTION CORPORATION, AND ROADGET BUSINESS PTE. LTD.'S
### <u>MOTION TO DISSOLVE OR MODIFY TEMPORARY RESTRAINING ORDER</u>

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................................... 4

    A.    Plaintiff and the Alleged Copyrights at Issue .............................................................4

    B.    The Defendants and the Goods at Issue ....................................................................4

    C.    Procedural History ....................................................................................................6

III. LEGAL ARGUMENT ................................................................................................ 7

    A.    Legal Standard .........................................................................................................7

    B.    Plaintiff Is Not Likely to Succeed on the Merits of His Claims .................................9

        1.    Because SDC Has Ceased the Allegedly Infringing Conduct, the TRO Is Moot and Success on the Merits of Plaintiff's Claims Need Not Be Reached............ 9

        2.    Defendants' Sales Are Lawful under the First Sale Doctrine....................... 10

        3.    Defendants' Alleged International Sales Do Not Violate the Copyright Act 12

    C.    Plaintiff Will Not Suffer Any Irreparable Harm Absent the TRO.............................13

    D.    The TRO Must Be Dissolved or Modified Because It Is Not Narrowly Tailored.....................................................................................................................17

    E.    The Hardships to Defendants Outweigh Any Alleged Harm to Plaintiff .................20

    F.    An Injunction Will Not Serve the Public Interest .....................................................21

IV.  CONCLUSION ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Altman v. Bedford Cent. Sch. Dist.*,
  245 F.3d 49 (2d Cir. 2001).........................................................................................12

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 462 (S.D.N.Y. 2010)...........................................................................7

*Bano v. Union Carbide Corp.*,
  361 F.3d 696 (2d Cir. 2004).........................................................................................13

*BMaddox Enters., LLC v. Oskouie*,
  2017 WL 9534738 (S.D.N.Y. Sept. 8, 2017)............................................................8, 11

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  934 F.2d 30 (2d Cir. 1991)...........................................................................................10

*C.D.S., Inc. v. Zetler*,
  217 F. Supp. 3d 713 (S.D.N.Y. 2016)............................................................................7

*Clonus Assocs. v. Dreamworks, LLC*,
  417 F. Supp. 2d 248 (S.D.N.Y. 2005)............................................................................9

*Dellwood Foods, Inc. v. Kraftco Corp.*,
  420 F. Supp. 424 (S.D.N.Y. 1976) ..............................................................................19

*Fonar Corp. v. Decaid Servs.*,
  983 F.2d 427 (2d Cir. 1993).........................................................................................12

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005).........................................................................................10

*Gardner v. Weisman*,
  2006 WL 2423376 (S.D.N.Y. Aug. 21, 2006)...............................................................7

*Gardner-Alfred v. Fed. Rsrv. Bank of New York*,
  2022 WL 748249 (S.D.N.Y. Mar. 11, 2022) .................................................................7

*Giantceutical, Inc. v. Ken Mable, Inc.*,
  356 F. Supp. 2d 374 (S.D.N.Y. 2005)..........................................................................17

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
  481 F.3d 60 (2d Cir. 2007)............................................................................................7

*Granite State Outdoor Adver., Inc. v. Town of Orange,*
    303 F.3d 450 (2d Cir. 2002)..................................................................14, 15

*Granny Goose Foods, Inc. v. Teamsters,*
    415 U.S. 423 (1974)....................................................................................7

*HarperCollins Publrs. LLC v. Open Rd. Integrated Media, LLP,*
    58 F. Supp. 3d 380 (S.D.N.Y. 2014).........................................................14

*Holland v. Goord,*
    758 F.3d 215 (2d Cir. 2014)................................................................10, 15

*Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,*
    389 U.S. 64 (1967)......................................................................................8

*JBR, Inc. v. Keurig Green Mountain, Inc.,*
    618 F. App'x 31 (2d Cir. 2015) ..............................................................7, 8

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,*
    58 F.3d 27 (2d Cir. 1995)..........................................................................17

*JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. & Trade Servs., Inc.,*
    295 F. Supp. 2d 366 (S.D.N.Y. 2003).......................................................11

*Klipsch Grp., Inc. v. Big Box Store Ltd.,*
    2012 WL 5265727 (S.D.N.Y. Oct. 24, 2012) ..........................................14

*Kregos v. Assoc. Press,*
    3 F.3d 656 (2d Cir.1993)...........................................................................16

*Marcy Playground, Inc. v. Capitol Records, Inc.,*
    6 F. Supp. 2d 277 (S.D.N.Y. 1998) ...........................................................9

*Marisa Christina, Inc. v. v. Bernard Chaus, Inc.,*
    808 F. Supp. 356 (S.D.N.Y. 1992) .............................................................9

*Matrix Essentials, Inc. v. Quality King Distribs.,*
    324 Fed. Appx. 22 (2d Cir. 2009)..............................................................18

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997) (per curiam)...............................................................7

*New York Tel. Co. v. Comm'ns Workers of Am.,*
    445 F.2d 39 (2d Cir. 1971).........................................................................8

*New York v. Actavis PLC,*
    787 F.3d 638 (2d Cir. 2015).......................................................................8

*Pass & Seymour, Inc. v. Hubbell Inc.*,
    532 F. Supp. 2d 418 (N.D.N.Y. 2007) ................................................................... 19

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994) ............................................................................... 18

*Rodriguez ex rel. Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir. 1999) ..................................................................................... 8

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ....................................................................................... 7

*Sanders v. Air Line Pilots Ass'n, Int'l*,
    473 F.2d 244 (2d Cir. 1972) ................................................................................... 12

*SEC v. Int'l Loan Network*,
    770 F. Supp. 678 (D.D.C. 1991) ............................................................................. 10

*SG Cowen Sec. Corp. v. Messih*,
    2000 WL 663434 (S.D.N.Y. May 17, 2000) ............................................................. 7

*Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*,
    2017 WL 737315 (S.D.N.Y. Feb. 6, 2017) ........................................................... 8, 9

*Sly Magazine, LLC v. Weider Publ'ns L.L.C.*,
    346 F. App'x 721 (2d Cir. 2009) ............................................................................. 16

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*,
    1999 U.S. Dist. LEXIS 19677 (S.D.N.Y. Dec. 22, 1999) ....................................... 18

*Spinelli v. National Football League*,
    903 F.3d 185 (2d Cir. 2018) ................................................................................... 16

*Sterling Ornaments Pvt. Ltd. v. Hazel Jewelry Corp.*,
    2015 WL 3650182 (S.D.N.Y. June 10, 2015) .......................................................... 8

*Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*,
    368 F. Supp. 3d 723 (S.D.N.Y. 2019) ...................................................................... 7

*The North Face Apparel Corp. v. TC Fashions, Inc.*,
    2006 WL 838993 (S.D.N.Y. 2006) ......................................................................... 14

*Thomson v. Larson*,
    147 F.3d 195 (2d Cir. 1998) ................................................................................... 15

*Vanity Fair Mills v. T. Eaton Co.*,
    234 F.2d 633 (2d Cir. 1956) ................................................................................... 13

*Waldman Publ'g Co. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994)................................................................12

**Federal Statutes**

17 U.S.C. § 102(a) ........................................................................13

17 U.S.C. § 201(a) ........................................................................15

17 U.S.C. § 301 ............................................................................16

**Rules**

Rule 65 ......................................................................................2, 6, 8

Defendants Zoetop Business Co., Ltd. ("Zoetop"), Shein Distribution Corporation ("SDC"), and Roadget Business Pte. Ltd. ("Roadget")[1] (collectively, "Defendants") respectfully move to dissolve or modify the *ex parte* temporary restraining order ("TRO") issued at the request of Plaintiff Weijie Weng ("Plaintiff"). (D.I. 14.)

## I. PRELIMINARY STATEMENT

Defendants have been caught in a dragnet of a Complaint filed by Plaintiff against 35 "Doe" defendants and dozens more named defendants. In his original Complaint (which named only Zoetop as a defendant), Plaintiff alleged that each of those defendants, through certain "Online Marketplaces" and "anonymous storefronts" (D.I. 1-3 at 10), infringe two of Plaintiff's copyrights—sparsely stylized renditions of common, everyday phrases such as "My First Birthday" and "My First 4th of July"— through the sale of apparel bearing those phrases. In an Amended Complaint, which Defendants were not aware of until the morning the instant motion was filed, Plaintiff added SDC and Roadget as defendants, and asserted a third alleged copyright for a work entitled "ONE." Armed with ***heavily plagiarized*** pleadings and moving papers from an unrelated case handled by Defendants' counsel, Plaintiff sought a TRO to enjoin Defendants and others from "directly or indirectly" infringing copyrights in "any copyrighted work that is owned or controlled by Plaintiff . . ., including the Copyrighted Works"; and "enabling, facilitating, permitting, assisting, soliciting, encouraging, or inducing others" to do the same. (D.I. 14 ¶ 1.) Moreover, the named defendants and certain "Online Marketplaces," including "SHEIN.com," were ordered to "immediately cease transferring or disposing of any money or other assets residing in those Defendants' Accounts," including "any and all bank accounts, credit card, or debit accounts, or other financial institution accounts linked to or associated

---

[1] Roadget, a Singapore company, is specially appearing as a restrained party to contest the TRO, but challenges that Plaintiff has adequately alleged the existence of personal jurisdiction over it.

with Defendants' Accounts . . . ." (*Id.* ¶ 2.) Despite serious deficiencies in its application, Plaintiff obtained the TRO he sought, and emailed it to Defendants' counsel on New Year's Eve.

Plaintiff's application for the TRO has failed to meet the requirements for this extraordinary and drastic remedy. Thus, Defendants request that the Court dissolve or modify the TRO as against them. Dissolution or modification of the TRO is warranted on several independent grounds.

First, and most notably, serious doubts exist as to the likelihood of success on the merits of Plaintiff's claims and the validity and scope of Plaintiff's asserted copyright registrations. For example, the asserted "My First Birthday" and "ONE" works were previously registered identifying three co-authors and co-owners, *including Zoetop's own supplier*. Plaintiff then fraudulently re-registered the same design under his own name, even though he knew that he was not the sole author or owner of the works. As a result, the asserted "My First Birthday" and "ONE" copyrights are likely unenforceable due to Plaintiff's fraud on the Copyright Office. But even if these copyrights are enforceable, Plaintiff cannot maintain suit against Defendants because Zoetop's and/or SDC's allegedly infringing sales are lawful under the first sale doctrine. They had purchased the products at issue from a legitimate rights owner.

Second, Plaintiff has failed to meet his heavy burden to prove there is "immediate and irreparable injury, loss, or damage" sufficient to warrant a TRO under Rule 65(b)(1). Plaintiff only speculates that all parties' collective sales of allegedly inferior products have harmed his reputation. Such conclusory and unsubstantiated assertions cannot show irreparable harm. There is also no harm because, out of an abundance of caution, Defendants have voluntarily ceased all sales of the products accused to infringe the asserted copyrights.

Third, the TRO's overbreadth and vagueness make it impossible for Defendants to comply with it, raising serious due process concerns. For instance, while the Amended Complaint only alleges

infringement of three works (only two of which are implicated by Defendants' activities), the TRO enjoins the use of "***any*** copyrighted work that is owned or controlled by Plaintiff." Given the generic nature of Plaintiff's alleged works, this leaves Defendants to guess what, if any, of the hundreds of thousands of unaccused products currently sold by SDC (or previously sold by Zoetop)[2] fall within the scope of this TRO. In addition, while United States copyrights are alleged, the TRO is not necessarily limited in geographic scope.

Fourth, the TRO could arguably be read to ban all of Defendants' transactions, including the sale of hundreds of thousands of different products that have not been (and could not be) accused of infringement. If so interpreted, the TRO's broad asset freeze provision is wholly unjustified and violates due process, because it was entered with no notice to Defendants and no opportunity for Defendants to be heard. The Defendants are not anonymous, "fly-by-night" entities seeking to avoid legal or financial obligations. SDC is a Delaware corporation having extensive operations in the United States, and both it and Zoetop have appeared in other actions in federal court. There is no risk that Defendants would move, secret, or dissipate assets to frustrate a judgment, and Plaintiff has not shown otherwise. Thus, the TRO's asset restraint should be dissolved, or at least modified to exclude transactions that are wholly unrelated to the alleged infringement.

Finally, Plaintiff has failed to show that any alleged harm outweighs the hardships to Defendants or that the TRO will serve the public interest.

For these reasons, the TRO should be dissolved or modified.

---

[2]  As set forth in the concurrently-filed Declaration of Tim Wei, Zoetop sold products to U.S. consumers through the us.shein.com website through July 31, 2021, and SDC has been selling products to U.S. consumers through the us.shein.com website since August 1, 2021.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff and the Alleged Copyrights at Issue

Plaintiff is an individual who purportedly owns copyrights in and to several works displayed on children's apparel. (Boyajian Decl., Ex. E (website); D.I. 1-3 ¶ 30.) All of Plaintiff's "works" are directed to word designs for generic phrases, such as "My First Christmas," "My First Easter," etc. (Boyajian Decl. ¶ 8, Ex. C.) In this action, Plaintiff alleges ownership of copyrights in three such registered word designs: (i) Registration No. VA 2-308-195 (the "'195 Registration"), for a work entitled "MY 1ST BIRTHDAY," (ii) Registration No. VA 2-254-020 (the "'020 Registration"), for a work entitled "First 4th of July 52918"; and (iii) Registration No. VA 2-314-705 (the "'705 Registration"), for a work entitled "ONE." (D.I. 27 ¶ 31; D.I. 28-4.) The '195 and '705 Registrations identify Plaintiff as the sole author of "MY 1ST BIRTHDAY" and "ONE," respectively (the "Designs at Issue"). (Boyajian Decl. ¶ 12.) But months before obtaining the '195 and '705 Registrations, Plaintiff previously filed two other registrations covering the Designs at Issue—respectively, Registration Nos. VAu001462941 (the "'941 Registration") and VAu001462938 (the "'938 Registration"). (*Id.* ¶ 9.). The '941 and '938 Registrations name *three* co-authors: Plaintiff, Qinmei Yu (Plaintiff's wife), and Lifei Zhou, the owner of Defendants' supplier. (*Id.*; Wei Decl. ¶ 7.)

### B.   The Defendants and the Goods at Issue

Zoetop was a global fashion and lifestyle e-tailer committed to making fashionable, on-trend products accessible to everyone. (Wei Decl. ¶ 2.) Zoetop sold products to U.S. consumers through the us.shein.com and us.romwe.com websites and associated mobile apps (the "US Websites") through July 31, 2021. (*Id.*) Zoetop is no longer operational and does not sell any products. (*Id.*)

A separate entity, SDC, began selling products to U.S. consumers through the US Websites starting August 1, 2021. (*Id.* ¶ 3.) Roadget, by contrast, does not sell *any* products to U.S. consumers.

(*Id.*) Rather, Roadget is SDC's indirect operating parent and the owner of the US Websites, which it licenses to SDC. (*Id.* ¶ 15.)

Zoetop sold, and SDC now sells, products in categories ranging from apparel (women's, men's, and children's), footwear, home goods, and accessories. (*Id.* ¶¶ 2-3.) Since 2017 alone, Zoetop and SDC have sold millions of products to consumers around the world on their websites. (*Id.* ¶ 4.) Thousands of new products are added to the US Websites every day. (*Id.*) Zoetop was, and SDC is, a sophisticated e-commerce retailer, and the SHEIN brand has a major global following. (*Id.*) SDC has a significant United States presence. (*Id.*) For example, SDC is a Delaware Corporation with a principal place of business in Los Angeles, California, and has a robust social media presence on U.S. social media platforms. (*Id.*) Additionally, Zoetop and SDC have actively participated in and resolved several lawsuits in U.S. courts, including in this District. (*Id.*)

Plaintiff alleges goods ("Goods at Issue") were sold by Defendants that infringe the copyright in the Designs at Issue. (D.I. 27 ¶ 28.)[3] Defendants did not design or make the Goods at Issue. (Wei Decl. ¶ 7.) Rather, Zoetop procured the Goods at Issue as ready-made, finished goods from an unaffiliated, third-party supplier ("Supplier"). (*Id.*) That Supplier is Lishui Yuke Garments Co., Ltd., an entity which was named as a defendant in Plaintiff's original Complaint, but who has since been dropped from this lawsuit. (*Compare* D.I. 1-3 *with* D.I. 27; Boyajian Decl. ¶ 5; Wei Decl. ¶ 7.) Defendants understand that Lifei Zhou, who, along with Plaintiff, was identified as an author on the '941 and '938 Registrations for MY 1ST BIRTHDAY and ONE, respectively, is the owner of the Supplier. (Boyajian Decl. ¶ 9; Wei Decl. ¶ 7.) Zoetop mandated that the Supplier enter into a contract with it. (Wei Decl. ¶ 7.) In that contract, the Supplier represented and warranted that the products it supplied did not infringe any third-party intellectual property rights, which are defined in the contract

---

[3] Neither Zoetop nor SDC have ever sold a product that could have allegedly infringed on Plaintiff's alleged "My First 4th of July" design. (*Id.*)

to include designs, texts, and patterns. (*Id.*) Additionally, as Defendants have learned, the Supplier (*not Plaintiff*) created the Designs at Issue, and merely hired Plaintiff to illustrate her idea. (*Id.*) Plaintiff apparently is trying to pass off designs co-authored by the Supplier to obtain copyright registrations in his name alone, after he had already registered the works jointly with the Supplier's owner (registrations which he omitted to disclose to this Court when he filed his bad faith application for a TRO).

Immediately upon becoming aware of Plaintiff's allegations in his original Complaint, out of an abundance of caution, SDC removed two product listings for the Good at Issue alleged to infringe the "MY 1ST BIRTHDAY" design from the US Websites and will refrain from offering them for sale pending the resolution of this case. (Wei Decl. ¶ 5.) Upon receiving the TRO, Defendants took steps to remove the remaining listings for the Goods at Issue. (*Id.*; Boyajian Decl. ¶¶ 6, 14.) None of the Defendants ever received any cease and desist correspondence—or any other correspondence—from Plaintiff prior to his filing suit or seeking a TRO. (Wei Decl. ¶ 5.)

## C.  <u>Procedural History</u>

Plaintiff, without notice, filed his Complaint (D.I. 1) and supporting papers, seeking a TRO, preliminary injunction, and expedited discovery against multiple parties allegedly engaged in a widespread conspiracy to infringe two commonplace designs. (D.I. 1-5, 7.) Only hours ago, Defendants learned that Plaintiff had filed an Amended Complaint and other documents purportedly in support of his TRO application. (D.I. 27)

Plaintiff's pleadings were **plagiarized** from documents prepared by **counsel for the Defendants** in an unrelated case: *Ningbo Mizhihe I&E Co. v. Does 1-200, et al.*, 19-CV-6655 (AKH) ("*Mizhihe*"). (*Compare, e.g.*, D.I. 5 *with* Boyajian Decl., Ex. A.) For example, despite altering these filings to conceal his copying, Plaintiff's Memorandum in Support of his TRO Application refers to

declarations (including attorney declarations) submitted in *Mizhihe* and other case-specific information. (*See, e.g.*, D.I. 5 at 21, 34 (citing declarations submitted by counsel and/or the client in *Mizhihe*).) Moreover, it is apparent that for his Amended Complaint and another document entitled "Plaintiff Wejie Weng's Reply in Support of Plaintiff's Motion" (D.I. 29), Plaintiff again plagiarized from yet another litigation: *Mollmann v. Zoetop Business Co., Ltd. et ano.*, No. 2:22-cv-04128-PA-GJS ("*Mollmann*")—a litigation in which the plaintiff levels unsubstantiated allegations of infringement and related claims against Zoetop and SDC—including plagiarizing portions of the prayer for relief that was based on provisions of the Copyright Act not asserted (or applicable) here. (*Compare, e.g.*, D.I. 27 at ¶¶ 61-62 with Boyajian Decl., Ex. B.)

To date, none of the Defendants have been properly served. (Wei Decl. ¶¶ 8-9; Boyajian Decl. ¶¶ 2-3.) Neither SDC (a domestic entity) nor Zoetop have been served with the Summons or Complaint in the manner required by Fed. R. Civ. P. 4. (Wei Decl. ¶ 8; Boyajian Decl. ¶ 2.) Plaintiff purported to serve *Roadget* with the Summons and the TRO (but not the Complaint) by emailing those documents to some of Defendants' counsel of record, along with dispute@shein.com and copyright@shein.com. (Wei Decl. ¶ 9; Boyajian Decl. ¶ 2.)

Similarly, although Plaintiff apparently filed six exhibits under seal in support of his application for a TRO (D.I. 23), Defendants only ***just*** received those documents (and the Amended Complaint) this morning. (Boyajian Decl. ¶¶ 3-4.) As of this filing, Defendants have not had ample time to examine those documents and fully obtain evidence to respond to them. (*Id.*) Thus, Defendants reserve the right to supplement their moving papers as contemplated by the Court. (D.I. 26.)

### III.    LEGAL ARGUMENT

#### A.    <u>Legal Standard</u>

Under Rule 65(b)(4), a party who is restrained by an order issued without notice may move on

two days' notice to the other side for an order dissolving or modifying the order. Fed. R. Civ. P. 65(b)(4); *see, e.g.*, *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 2022 WL 748249, at *1 (S.D.N.Y. Mar. 11, 2022). On a motion to dissolve a temporary restraining order, the party that obtained the order bears the burden of justifying continued injunctive relief. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 443 (1974) ("The burden was on [the applicant for the TRO] to show that they were entitled to a preliminary injunction, not on [the restrained party] to show that they were not."); *Gardner v. Weisman*, 2006 WL 2423376, at *1 (S.D.N.Y. Aug. 21, 2006) (citing *SG Cowen Sec. Corp. v. Messih*, 2000 WL 663434, at *1 (S.D.N.Y. May 17, 2000)).

Thus, Plaintiff has the burden of proving (1) a likelihood of success on the merits; (2) a likelihood that it will suffer irreparable harm if the temporary restraining order is not continued; (3) that the balance of hardships is in its favor and (4) that the relief is in the public interest. *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (citing *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010))[4]; *Sterling v. Deutsche Bank Nat'l Tr. Co. as Trustees for Femit Tr. 2006-FF6*, 368 F. Supp. 3d 723, 727 (S.D.N.Y. 2019). Like a preliminary injunction, a temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (quotation marks omitted); *see also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 462, 472 (S.D.N.Y. 2010) ("Temporary restraining orders and preliminary injunctions are among 'the most drastic tools in the arsenal of judicial remedies,' and must be used with great care.") (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Plaintiff cannot meet this heavy burden.

---

[4] Although *JBR, Inc.*, 618 F. App'x at 31, concerned a preliminary injunction, "[t]he legal standards governing preliminary injunctions and temporary restraining orders are the same." *C.D.S., Inc. v. Zetler*, 217 F. Supp. 3d 713, 716 n.1 (S.D.N.Y. 2016). Thus, cases addressing preliminary injunctions are just as applicable here.

Under Federal Rule of Civil Procedure 65(b)(2), "[e]very temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Fed. R. Civ. P. 65(b)(2). By its own terms, Rule 65 thus "expresses a policy against vague decrees." *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). And "an overly broad decree whose terms are divorced from the relief sought may be as ambiguous as a vague decree." *New York Tel. Co. v. Comm'ns Workers of Am.*, 445 F.2d 39, 48 (2d Cir. 1971) (internal quotations omitted).

A motion to dissolve should be granted where the temporary restraining order was improperly issued. *BMaddox Enters., LLC v. Oskouie*, 2017 WL 9534738, at *6 (S.D.N.Y. Sept. 8, 2017), *adopted*, 2017 WL 479706 (S.D.N.Y. Oct. 23, 2017).

**B.      Plaintiff Is Not Likely to Succeed on the Merits of His Claims**

1.      Because SDC Has Ceased the Allegedly Infringing Conduct, the TRO Is Moot and Success on the Merits of Plaintiff's Claims Need Not Be Reached

"[T]o establish that there is a likelihood of success on the merits, as required for an injunction [] to lie, the movant must establish that the case is not likely to be moot." *Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (internal citations omitted); *see also Holland*, 758 F.3d at 223 ("[V]oluntary cessation of a challenged practice …[is] an important factor bearing on the question whether a court should exercise its power to entertain a request for injunctive relief or declare it moot."). In *Granite*, before the hearing on the preliminary injunction, the defendant remedied the complained-of conduct, allegedly unjust zoning regulations, by amending the regulations at issue. 303 F.3d at 451. The court consequently held that the plaintiff's motion was moot and thus unlikely to succeed on the merits as the defendant had "completely revised its regulations through proper

procedures." *Id.* at 451-52. Similarly, here, SDC's "voluntary cessation of [the] challenged practice" renders the TRO moot. Thus, Plaintiff cannot show that he is likely to succeed on the merits of his claims.

### 2.    Defendants' Sales Are Lawful under the First Sale Doctrine

Even if the TRO were not moot (it is), Plaintiff is not likely to succeed on the merits of his claims. The Goods at Issue, which Plaintiff claims are infringing the Designs at Issue, were sold to Defendants by the Supplier, Lishui Yuke Garments Co., Ltd., whose owner (Lifei Zhou) is named on the '941 and '938 Registrations as a co-author and co-owner of those same designs—registrations which issued months before Plaintiff fraudulently obtained the '195 and '705 Registrations he asserts in this case. (*See* Wei Decl. ¶ 7; Boyajian Decl. ¶¶ 9-11 (comparing registrations).) Indeed, the Supplier was ***dropped*** as a defendant in this very lawsuit—indicating that Plaintiff determined that the Supplier could not be liable for copyright infringement based on its creation and ownership of the works. (*Compare* D.I. 1-3 *with* D.I. 27.)

"Copyright in a work protected under [the Copyright Act] thus initially vests in the author or authors of the work." 17 U.S.C. § 201(a). "The authors of a joint work are co[-]owners of copyright in the work." *Id.* As described in the House Report accompanying passage of the Copyright Act, co-owners must "be treated generally as tenants in common, with each co[-]owner having an independent right to use or license the use of a work, subject to a duty of accounting to the other co[-]owners for any profits." H.R. Rep. No. 94-1476, at 121 (1976); *see Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) ("Joint authorship entitles the co-authors to equal undivided interests in the whole work – in

other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made.").

The Copyright Act further provides that "the owner of a particular copy … lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy[.]" 17 U.S.C. §109(a). This provision of copyright law is known as the "first sale doctrine." *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 523-24 (2013). As the Supreme Court held, "in copyright jargon, the 'first sale' has 'exhausted' the copyright owner's § 106(3) exclusive distribution right." *Id.* at 524. The first sale doctrine applies even to copies lawfully made abroad. *Id.* at 525; *see also Quality King Distributors, Inc. v. L'Anza Research Int'l, Inc.*, 523 U.S. 135 (1998).

Here, as the Defendants have learned, the Supplier was a co-author and co-owner of the Designs at Issue. (Wei Decl. ¶ 7; Boyajian Decl. ¶¶ 10-11.) As such, the Supplier was clearly able to make the Goods at Issue and sell them to Zoetop. Zoetop procured the Goods at Issue as ready-made, finished goods from the Supplier. (Wei Decl. ¶ 7.) In the contract between Zoetop and the Supplier, the Supplier represented and warranted that the products it supplied did not infringe any third-party intellectual property rights. (*Id.*) Accordingly, under the first sale doctrine, Defendants are statutorily permitted to sell the Goods at Issue, and cannot be liable for Plaintiff's claims of copyright infringement. Or, put another way, Defendants were licensed by the Supplier to further sell the Goods at Issue to their customers. *See Spinelli v. National Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (valid license "immunizes the licensee from a charge of copyright infringement").

Plaintiff has attempted to overreach in asserting intellectual property protection in other ways as well. For example, Plaintiff submitted at least 24 "intent to use" trademark applications to the U.S. Patent and Trademark Office, seeking exclusive trademark rights over many of the same generic

phrases for which he obtained copyright registrations. (Boyajian Decl. ¶¶ 14-15.) Of course, no one

has the right to obtain trademark protection for phrases such as "My First Birthday," "My First Fourth

of July," and the like. But Plaintiff's brazen attempt to do so casts further doubt on the likelihood of

success on his claims against Defendants—a similar form of intellectual property overreach.

      3.    <u>Defendants' Alleged International Sales Do Not Violate the Copyright Act</u>

To support his claims and his TRO application, Plaintiff submits documents referring to a

number of purchases of allegedly infringing Goods at Issue made by Plaintiff's wife, Qinmei Yu. (D.I.

29 ("Proof of Defendants SHEIN's Willful Infringement & Unfair Competition"); D.I. 29-7 (Yu

Declaration).) As stated in those documents, Ms. Yu's purchases were from "SHEIN's other websites,"

including "ph.shein.com," "asia.shein.com," and other overseas websites. (D.I. 29 ¶¶ 3-4; *see also*

Schedule A thereto (listing locations in "Asia," "Philippines," "South Africa," "Europe," and

"Israel").)

Even if Defendants were somehow involved in those sales—they were not[5]—the overseas

sales of allegedly infringing goods do not violate the Copyright Act, and thus, do not indicate that

Plaintiff is likely to succeed on his claims. "It is well established that copyright laws generally do not

have extraterritorial application." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988).

This precept is in accordance with interpretation of United States laws generally; as the Supreme Court

held, "[i]t is a longstanding principle of American law that legislation of Congress, unless a contrary

intent appears, is meant to apply only within the territorial jurisdiction of the United States." *E.E.O.C.

v. Arabian American Oil Co.*, 499 U.S. 244, *abrogated by statute on other grounds*, Pub. L. No. 102-

---

[5] Zoetop ceased to sell products after July 31, 2021, and thus cannot be responsible for the alleged sales here, which purport to have taken place in 2022. (Wei Decl. ¶ 2.) SDC is a United States company and only sells via the US Websites. (*Id.* ¶ 3.) While the Exhibits to Plaintiff's alleged "proof" of "SHEIN's" infringement contain some references to Roadget, Roadget does not perform the sales activities that Plaintiff seeks to ascribe to it. But that is of no moment, since sales outside of the United States are not actionable.

166 § 109, 105 Stat. 1071 (1991). The only exception to this is "[w]here an individual commits an act of infringement in the United States that permits further reproduction outside the United States—such as where an individual makes unauthorized copies of copyrighted material and sends them out of the country," in which case "a court may assert jurisdiction over those foreign acts and a plaintiff may recover damages that took place extraterritorially." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 WL 724723, at *4 (S.D.N.Y. Dec. 17, 1996) (citing *Update Art*, 843 F.2d at 73). In this case, however, Plaintiff provides no proof, and does not even attempt to show, that Defendants committed a predicate act of *domestic* infringement permitting the extraterritorial sales identified in Plaintiff's documents. Indeed, even assuming Roadget—a Singaporean company—obtained the Goods at Issue from a Chinese Supplier and sold, permitted, or facilitated the sale of those Goods at Issue in Asia or elsewhere, that chain of activity would have taken place wholly outside the United States. Thus, the exception set forth in *Update Art* does not apply, and Defendants' alleged extraterritorial sales are irrelevant to the Plaintiff's likelihood of success on its claims for copyright infringement under domestic law. [6]

## C.    Plaintiff Will Not Suffer Any Irreparable Harm Absent the TRO

"[I]rreparable harm is the ***'sine qua non'***" for a temporary restraining order or preliminary injunction. *JBR, Inc.*, 618 Fed. App'x at 33 (emphasis in original); *see also Rodriguez ex rel. Rodriguez*

---

[6] Plaintiff's TRO Application is grounded solely in its alleged likelihood of success on its copyright infringement claim. D.I. 5 at 23-24. Plaintiff's Amended Complaint also includes a claim for alleged unfair competition, but Plaintiff does not explain in its Application why it would be likely to succeed on that claim. In any case, Plaintiff's claim for unfair competition hinges on the alleged unauthorized reproduction and/or distribution of allegedly infringing designs, and is thus preempted by the Copyright Act. 17 U.S.C. § 301; *see Kregos v. Assoc. Press*, 3 F.3d 656, 665-66 (2d Cir. 1993). Moreover, a claim for unfair competition under New York law requires "some showing of bad faith on the part of the defendants," *Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009), and Plaintiff has neither plead nor provided any evidence suggesting that Defendants acted in bad faith. Indeed, as Zoetop mandated that its Supplier enter into a contract wherein the Supplier warranted that the goods it provided were non-infringing, Defendants could only have said to be proceeding in good faith. Thus, Plaintiff is unlikely to succeed on the merits of his unfair competition claim as well. Finally, Plaintiff's Amended Complaint includes, in its prayer for relief, an award based on alleged violations of the Lanham Act, 15 U.S.C. §1117, and the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)-(b). (D.I. 27 ¶¶ 49-62.) These requests are likely the result of Plaintiff's rampant plagiarism of the pleadings of third parties, as Plaintiff does not state a claim or assert causes of action under these statutes.

*v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction."). "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015). "Since monetary injury generally does not constitute irreparable harm, 'a plaintiff seeking damages must prove either that the defendant took steps to frustrate a future judgment or that the defendant is or imminently will be insolvent' in order to" show irreparable harm. *Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, 2017 WL 737315, at *3 (S.D.N.Y. Feb. 6, 2017) (quoting *Sterling Ornaments Pvt. Ltd. v. Hazel Jewelry Corp.*, 2015 WL 3650182, at *1 (S.D.N.Y. June 10, 2015).

Plaintiff alleges that he will suffer irreparable harm without the TRO for two reasons: (1) that Defendants' alleged sale of lower quality infringing goods caused him reputational harm (D.I. 5 at 24);[7] and (2) that there is a risk that the Defendants would be unable to satisfy a judgment (*id.* at 28-31). But Plaintiff has not provided ***any*** evidence for either of these alleged harms. Courts in this Circuit have without rejected such speculative arguments in deciding whether to issue temporary restraining orders or preliminary injunctions. *Clonus Assocs. v. Dreamworks, LLC*, 417 F. Supp. 2d 248, 254 (S.D.N.Y. 2005) (finding no irreparable harm where "plaintiff's claim [wa]s unsupported by concrete evidence.").[8]

---

[7] Plaintiff's *Ex Parte* Application for a Temporary Restraining Order (D.I. 5) does not have internal page numbers. Citation to page numbers refers to the pagination in ECF filings at the top of each page.

[8] *See also, e.g.*, *Marcy Playground, Inc. v. Capitol Records, Inc.,* 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) ("The only evidence [of irreparable harm is] the conclusory and unsubstantiated assertions of irreparable injury by [the parties]…The most that can be said is that they have advanced a speculative theory."); *Marisa Christina, Inc. v. v. Bernard Chaus, Inc.*, 808 F. Supp. 356, 359 (S.D.N.Y. 1992) ("Plaintiff's chief argument seems to be that a customer who bought one of the plaintiff's sweaters from last year may see one of defendant's substantially similar copies selling at half price and feel that they were ripped off by the plaintiff. The plaintiff has presented no evidence in the record to support what is a [wholly] speculative claim of injury. Plaintiff's theory of irreparable harm standing on its own is too hypothetical to form the basis for a preliminary injunction.") (citation omitted).

While Plaintiff is correct that the loss of customer goodwill and reputation *could* constitute irreparable harm in some cases, he has not shown that his reputation has been damaged with the requisite specificity. For example, Plaintiff provides no evidence of any customer reviews or complaints that Defendants' products were of inferior quality. Plaintiff also has provided no evidence showing that his products have a "reputation of quality." (D.I. 5 at 24.) Plaintiff's bare speculation of potential damage to his reputation cannot demonstrate irreparable harm. To the contrary, "Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but ***actual and imminent***.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (emphasis added). As the Supreme Court has cautioned:

> Issuing [injunctive relief] based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

*Winter*, 555 U.S. at 22. The "mere possibility of irreparable harm" – which is at best what Plaintiff alleges here – "is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 934 F.2d 30, 34 (2d Cir. 1991).

Further, Plaintiff will suffer no immediate or irreparable harm here as Zoetop and/or SDCout of an abundance of caution, have already stopped selling the Goods at Issue on the US Websites, thereby neutralizing any alleged harm to Plaintiff and mooting the TRO. (*See* Wei Decl. ¶¶ 2-5; Boyajian ¶ 6.) "[V]oluntary cessation of a challenged practice …[is] an important factor bearing on the question whether a court should exercise its power to entertain a request for injunctive relief or declare it moot." *Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014).

Plaintiff has also presented no evidence that Defendants have secreted or diverted assets, or that there is even a possibility that Defendants will divert their sales proceeds before this matter concludes. Unless plaintiff produces evidence of improper asset diversion or secretion, at least the asset freeze order should not continue. *See SEC v. Int'l Loan Network*, 770 F. Supp. 678, 697 (D.D.C. 1991),

*aff'd*, 968 F.2d 1304 (1992). Beyond Plaintiff's say-so, there is no evidence that Defendants "will evade enforcement of any potential judgment issued in this case" or that they "have escalated their efforts to misappropriate [Plaintiff's] intellectual property after being notified of their infringement." D.I. 5 at 31. The record shows the opposite. Unlike the defendants in many cases cited in Plaintiff's TRO Application, the Defendants are not an undercapitalized or absentee party. As Plaintiff's TRO Application acknowledges (*id.* at 16), Zoetop was, and SDC is, a sophisticated e-commerce retailer, and the SHEIN brand has a major global following. (Wei Decl. ¶ 4.) SDC, in particular, has a significant United States presence. (*Id.*) SDC is a Delaware Corporation with a principal place of business in Los Angeles, California, and has a robust social media presence on U.S. social media platforms. (*Id.*) Additionally, Zoetop and SDC have actively participated in and resolved several lawsuits in U.S. courts, including in this District. (*Id.*) Defendants have appeared in this action and are not hiding or evading the jurisdiction of the Court. *JSC Foreign Econ. Ass'n Technostroyexport v. International Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 390 (S.D.N.Y. 2003) (declining to find irreparable harm when the defendants were "subject to continuing scrutiny in the course of discovery in [the] case" and were in the Court's jurisdiction, and there was no "suggestion that they would flee or would not be subject to the continuing orders of the Court"). There is also no evidence that Defendants cannot or will not satisfy a potential judgment.

Nor have Defendants "escalated" any challenged conduct in response to Plaintiff's allegations. None of the Defendants ever received notice of alleged copyright infringement from Plaintiff before the filing of this action. (Wei Decl., ¶ 6.) As soon as Defendants became aware of Plaintiff's allegations, out of an abundance of caution, SDC removed the two product listings that allegedly infringed Plaintiff's "My First Birthday" design. (*Id.* ¶ 5.) And upon receipt of the Amended Complaint and the allegations regarding the "ONE" design, Defendants again took steps to remove allegedly infringing

listings. (*Id.*; Boyajian Decl. ¶ 14.) "Absent any evidence that defendants either have secreted assets or are about to do so in an effort to frustrate a future judgment," Plaintiff's claim of irreparable harm must fail. *BMaddox Enters., LLC*, 2017 U.S. LEXIS 146766, at *12.

Thus, Plaintiff cannot sustain his burden of showing immediate and irreparable harm and the TRO should be dissolved for this reason alone.

**D.**      **The TRO Must Be Dissolved or Modified Because It Is Not Narrowly Tailored**

An injunction "should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." *Waldman Publ'g Co. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994). In *Cognex Corp. v. Microscan Sys., Inc.*, the court explicitly limited its injunctive order so that it did not enjoin "importation, sale, and/or manufacture of *noninfringing* versions" of the accused product. No. 13-CV-2027 JSR, 2014 U.S. Dist. LEXIS 91203, at *7 (S.D.N.Y. June 30, 2014) (emphasis in original). As the court recognized, "the existence of an alternative non-infringing design would also mean that plaintiffs no longer suffer irreparable injury or hardship from defendants' importation, manufacture, and/or sale of the [infringing product] itself." *Id.* Further, any injunction must provide guidance to the enjoined party as to how it can or cannot act. *See Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 81 (2d Cir. 2001) ("Without greater guidance in the injunction itself, an attempt at compliance would likely result in guidelines that either were so detailed as to foreclose activities [], or so general as to provide little guidance."). The TRO issued in this case is overly broad in at least two respects.

First, the TRO would enjoin Defendants from "infringing *any copyrighted work that is owned or controlled by Plaintiff . . . , including the Copyrighted Works*." **(***See* D.I. 14 at 3 (emphases added).) Such overly broad terms are "too indefinite and ambiguous to permit of enforcement." *Fonar Corp. v. Decaid Servs.*, 983 F.2d 427, 430 (2d Cir. 1993); *see also Sanders v. Air Line Pilots Ass'n, Int'l*, 473

F.2d 244, 247 (2d Cir. 1972) ("The normal standard of specificity [required for a TRO or injunction] is that the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden."). Other than the "Copyrighted Works" (defined to mean the works specifically identified in the Complaint), there is simply no way to know what "copyrighted works" are purportedly "owned or controlled by Plaintiff"— particularly given the generic nature of Plaintiff's alleged works, the fact that Plaintiff and the Supplier are co-owners of several registered works, the fact that allegedly infringing products appear to be sold by multiple parties through multiple stores on the internet, and the fact that copyright is secured by merely fixing a work in a tangible medium of expression. 17 U.S.C. § 102(a). Copyright registration is "not a condition of copyright protection," *id.* § 408(a), and neither is the use of a copyright notice. *Id.* § 401(a). The expansive the scope of the TRO makes it nearly impossible to comply with the order without either (1) inadvertently violating the Order,[9] or (2) limiting sales of products that do not infringe Plaintiff's intellectual property and thereby causing Defendants to incur substantial economic and market harm. (Wei Decl., ¶ 16.)

Second, the portion of the TRO that requires Defendants to cease transferring or disposing of money or other assets residing in their accounts, including "any and all bank accounts, credit card, or debit accounts, or other financial institution accounts linked to or associated with Defendants' Accounts," TRO ¶ 2, could arguably be read to freeze **all** financial activities related **in any way** to Defendants' business—including the sale of many hundreds of thousands of products, on websites serving other territories, that are not subject to an infringement allegation in this (or any other) case, or indeed, are not copyrighted or even copyrightable. (Wei Decl., ¶ 14.)[10] This would obviously be

---

[9] *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633, 647 (2d Cir. 1956) (power to enjoin a party "should be exercised with great reluctance when it will be difficult to secure compliance with any resulting decree. . . ."); *Bano v. Union Carbide Corp.,* 361 F.3d 696, 716 (2d Cir. 2004) ("If drafting and enforcing are found to be impracticable, the injunction should not be granted.").

[10] This would be akin to preventing a retailer like Macy's from transferring *any* money at all based on a few allegedly infringing items of apparel.

overbroad and unworkable. The asset freeze appears to be directed toward activities conducted through "Online Marketplaces" such as Amazon Marketplace and eBay.com, which are used by third-party buyers and sellers as a platform to transact business between themselves through "storefronts" set up on the platform. (TRO ¶ 2; *see also* D.I. 27 ¶¶ 10 ("the Doe Defendants conduct business through one or more of the Online Marketplaces through various anonymous storefronts"), 11 ("The Doe Defendants operate Storefronts on online marketplaces through which they market and sell products that infringe Weijie's copyrighted designs"); D.I. 5 at 31 (alleging that "Defendants have intentionally and deliberately set up over approximately 45 anonymous Storefronts to further their infringing efforts").) Here, Defendants are not "online marketplaces" in the nature of eBay or Amazon Marketplace, and thus do not have separate "accounts" associated with specific third-party buyers and sellers. (Wei Decl. ¶ 15.) Defendants are a retailer. The injunctive relief granted here is akin to freezing all of the bank accounts of Target or Walmart based solely on an allegation that they sold a few infringing products. It would be extremely prejudicial and inequitable to force Defendants to shut down their legitimate business based on the sale of a few allegedly infringing SKU(s), which amounts to an extremely small portion of sales made by Zoetop and/or SDC. (*Id.* ¶ 14.) This is particularly the case where there are serious questions as to the validity of Plaintiff's asserted intellectual property and strong evidence pointing to Plaintiff's unclean hands. (*See* Section III.B, *supra*.)

Setting aside the fact that Plaintiff has not shown that an asset freeze is equitable or needed *at all* against these Defendants (*see* Section III.B, *supra*; Wei Decl. ¶¶ 11, 13), the overbroad nature of the asset freeze is disproportionate to the needs of this case and should be dissolved or modified to allow Defendants to conduct legitimate business activities wholly unrelated to the alleged infringement. *Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 WL 5265727, at *5 (S.D.N.Y. Oct. 24, 2012) ("while the Court agrees with Plaintiff that it has the power to freeze assets to preserve a later

award of an equitable accounting, such a freeze such be confined in scope to the likely profits of counterfeiting activity."); *The North Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *3 (S.D.N.Y. 2006) ("The Court may exempt any particular assets from the freeze on the ground that they are not linked to the profits of allegedly illegal activity.").

Defendants' solution—to halt the sale and advertising of the complained-of products, which they have already voluntarily done and have guaranteed that they will continue to do—is narrow enough to comply with established law and also sufficiently effective. The Court should thus dissolve the TRO or modify it to cover the only allegedly infringing products Zoetop and SDC have sold in the United States. *See, e.g.*, *HarperCollins Publrs. LLC v. Open Rd. Integrated Media, LLP*, 58 F. Supp. 3d 380, 388 (S.D.N.Y. 2014) (holding that only a narrow injunction was appropriate, only granting it as to "works whose copyright assignments to [plaintiff] used the same language," and "declining to extend the scope of [the] injunction to works as to which the publishing contracts contained 'substantially identical language.'").

## E.    The Hardships to Defendants Outweigh Any Alleged Harm to Plaintiff

Plaintiff has failed to allege any harm, and thus cannot show that any such alleged harm would outweigh the hardship to Defendants if the TRO continues. Plaintiff cannot prove – and, at a minimum, has not proven – that his position in the market has been harmed as a result of Defendants' alleged conduct, and thus Plaintiff fails to prove that he has been or will be harmed at all, let alone irreparably. Additionally, as detailed above, there is no irreparable or immediate harm to Plaintiff, as any such harm has already been remedied by SDC's removal of the product listings from its website(s) and its certification that it will refrain from offering them for sale pending the resolution of this case.

In considering the balance of hardships, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested

relief." *Winter*, 555 U.S. at 24. This court has recognized that the "hardship on a preliminarily enjoined manufacturer who must withdraw its product from the market before trial can be devastating." *Giantceutical, Inc. v. Ken Mable, Inc.*, 356 F. Supp. 2d 374, 382 (S.D.N.Y. 2005). Nevertheless, SDC has already done so, and thus any broader injunction will only cause it and the other Defendants further harm—compounded by the breadth of the asset freeze requirement of the TRO, which would cripple Defendants' ability to conduct legitimate business wholly unrelated to the allegedly infringing activities in this case. (*See* Section III.D., *supra*.)

Thus, the balance of hardships strongly weighs against an injunction.

## F.      An Injunction Will Not Serve the Public Interest

A plaintiff seeking a preliminary injunction must also establish that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiff argued that the requested TRO would serve public interest because it would prevent inferior products from entering the market and it would enforce copyright protections. (D.I. 5 at 26-27.) But as explained above, Plaintiff has not provided any evidence that Defendants' products were of inferior quality. Indeed, it is likely that both Plaintiff's and Defendants' products were made by the same supplier. Nor has he shown that his own products are of superior quality and meet "rigorous consumer product safety standards." *Winter*, 555 U.S. at 26.

The public's interest in enforcing copyright protections, present in every copyright case, also does not justify a preliminary injunction. *Cf. Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558-59 (Fed. Cir. 1994). Indeed, that public interest can be served by awarding monetary damages, if the asserted copyrights were infringed and valid. *See, e.g., SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 1999 U.S. Dist. LEXIS 19677, at *16 (S.D.N.Y. Dec. 22, 1999), *aff'd*, 211 F.3d 21 (2d Cir. 2000) (explaining that "the public's interest in the protection of copyrights can be

vindicated to some degree by an award of money damages," and dissolving preliminary injunction even though "money damages [were] not likely to fully compensate SmithKline for its injuries").

The public also has a countervailing interest in market competition. *Matrix Essentials, Inc. v. Quality King Distribs.*, 324 Fed. Appx. 22, 24 (2d Cir. 2009) (explaining that an "injunction, if enforced, would keep one significant competitor out of the [] market…possibly driving up prices…and implicating the same public interest in competition"). Indeed, this court has held that in considering whether to issue injunctive relief, "any reduction in competition must be considered against the public interest." *Dellwood Foods, Inc. v. Kraftco Corp.*, 420 F. Supp. 424, 428 (S.D.N.Y. 1976). Enjoining Defendants from selling reasonably priced, accessible clothing and accessories—that it lawfully obtained from a Supplier who indicated that ***she*** created the Designs at Issue, no less—would reduce competition, to the public's detriment. The "powerfully anti-competitive repercussions which [an injunction] can bring about [] is aptly illustrated in this case, in which [Plaintiff] seeks to invoke the court's power, prior to a determination on the merits, to preclude a potential direct competitor" from offering a new product. *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 431-32 (N.D.N.Y. 2007). Additionally, as discussed above, children's clothing containing the alleged works are commonplace goods, and any injunction prohibiting production and sale of the same would give Plaintiff a monopoly on such goods, which would only stymie competition and creativity in the fashion market.

Moreover, one "who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co*., 324 U.S. 806, 814 (1945); *see also Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009) ("The clean hands doctrine is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have

been the behavior of the defendant.") (quotations omitted). Continuing an ill-gotten TRO by someone who has likely committed fraud on the Copyright Office and plagiarized from numerous court records is contrary to the public interest and strains the bounds of equity.

## IV.    CONCLUSION

For these reasons, the Court should respectfully grant Defendants' Motion to Dissolve or Modify the TRO in this case.

Dated:  January 6, 2023                    **GREENBERG TRAURIG, LLP**

By: */s/ Justin A. MacLean*

Justin A. MacLean
Giancarlo L. Scaccia
One Vanderbilt Avenue
New York, NY 100017
Tel: 212-801-3137
Email: Justin.MacLean@gtlaw.com
Email: scacciag@gtlaw.com

Nina D. Boyajian *(Pro Hac Vice Pending)*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: 310-586-7700
Email: BoyajianN@gtlaw.com

*Attorneys for Defendants Zoetop Business Co., Ltd., Shein Distribution Corporation, Roadget Business Pte. Ltd.*