**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WEIJIE WENG,

                 Plaintiff,

vs.

DOES 1-35; ZOETOP BUSINESS CO., LIMITED;
SHEIN DISTRIBUTION CORPORATION;
ROADGET BUSINESS PTE. LTD;
ZHANGJIAGANG BAI XUAN IMPORT AND
EXPORT TRADE CO., LTD; MIDA; TIACHAM;
SHENZHEN JIER TRADING CO., LTD;
ZEMPERTOOPA; THE DANNA BELLE STORE;
THE BILISON STORE; KEHEN; FRAGARN;
GUMIPY; XAOXEIJUQ ; PYBCVRRD;
BABANY BEBE; THE BILISON STORE; THE
GRNSHTS STORE; AUNAVEY; BLOTONA;
KIAPEISE; MAEMUKILABLE; KGURTAGH;
THE LITTLE GIRL'S STORE; THE SHALOFER
STORE; KIDSFASHIONSHOP; FEIKEBELLA;
BABANY; BABY'S BOUTIQUE STORE;
PRINCESSGIRLS; LISHUI FANHUA
TECHNOLOGY CO., LTD; F&H BABY STORE;
YK&LOVING OFFICIAL STORE; HANGZHOU
LINGPAI NETWORK TECHNOLOGY CO.,
LTD; and PRETTYBABY2020,

                 Defendants.

Case No.  22-cv-7082 (JPO)

---

**DEFENDANTS ZOETOP BUSINESS CO., LTD., SHEIN DISTRIBUTION**
**CORPORATION, AND ROADGET BUSINESS PTE. LTD.'S**
**RESPONSE TO ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  FACTUAL BACKGROUND .................................................................................. 3

A.  Plaintiff and the Alleged Copyrights at Issue, Which Were Co-Created by
Supplier ........................................................................................................3

B.  The Defendants and the Goods at Issue ....................................................5

C.  Procedural History ......................................................................................7

III.  LEGAL ARGUMENT ........................................................................................... 8

A.  Legal Standard ............................................................................................8

B.  Plaintiff Is Not Likely to Succeed on the Merits of His Claims .................9

1.  Because SDC Has Ceased the Allegedly Infringing Activity, any Preliminary
Injunction Is Moot and Success on the Merits Need Not Be Reached ........... 9

2.  Defendants' Sales Are Lawful under the First Sale Doctrine........................ 9

3.  Defendants' Alleged International Sales Do Not Violate the Copyright Act 13

C.  Plaintiff Will Not Suffer Any Irreparable Harm Absent a Preliminary
Injunction....................................................................................................15

D.  The Hardships to Defendants Outweigh Any Alleged Harm to Plaintiff .................17

E.  An Injunction Will Not Serve the Public Interest ....................................18

F.  Should The Court Be Inclined To Grant The Injunction, Plaintiff Should
Be Required To Increase the Bond ..........................................................20

IV.  CONCLUSION ................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*ACLU v. Clapper*,
  804 F.3d 617 (2d Cir. 2015)........................................................................................9

*Automated Merch. Sys. v. Carne Co.*,
  357 F. App'x 297 (Fed. Cir. 2009) ............................................................................17

*Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  934 F.2d 30 (2d Cir. 1991).........................................................................................16

*Clonus Assocs. v. Dreamworks, LLC*,
  417 F. Supp. 2d 248 (S.D.N.Y. 2005)........................................................................15

*Dellwood Foods, Inc. v. Kraftco Corp.*,
  420 F. Supp. 424 (S.D.N.Y. 1976) ............................................................................19

*E.E.O.C. v. Arabian Am. Oil Co.*,
  499 U.S. 244, *abrogated by statute on other grounds* .............................................14

*Effects Assocs., Inc. v. Cohen*,
  908 F.2d 555 (9th Cir. 1990), *cert. denied*, 111 S. Ct. 1003 (1991)........................12

*Freedom Holdings, Inc. v. Spitzer*,
  408 F.3d 112 (2d Cir. 2005)........................................................................................16

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
  1996 WL 724723 (S.D.N.Y. Dec. 17, 1996) ............................................................14

*Giantceutical, Inc. v. Ken Mable, Inc.*,
  356 F. Supp. 2d 374 (S.D.N.Y. 2005)........................................................................18

*Granite State Outdoor Adver., Inc. v. Town of Orange*,
  303 F.3d 450 (2d Cir. 2002).........................................................................................9

*Hanson Trust PLC v. SCM Corp.*,
  774 F.2d 47 (2d Cir. 1985)...........................................................................................8

*Holland v. Goord*,
  758 F.3d 215 (2d Cir. 2014)...................................................................................9, 17

*JBR, Inc. v. Keurig Green Mountain, Inc.*,
  618 Fed. App'x 31 (2d Cir. 2016)..............................................................................15

*Johnson Controls Inc. v. APT Critical Sys., Inc.*,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)...................................................................20

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    568 U.S. 519 (2013)....................................................................................10, 11

*Kregos v. Assoc. Press*,
    3 F.3d 656 (2d Cir. 1993)..............................................................................14

*Marcy Playground, Inc. v. Capitol Records, Inc.*,
    6 F. Supp. 2d 277 (S.D.N.Y. 1998) ...............................................................15

*Marisa Christina, Inc. v. v. Bernard Chaus, Inc.*,
    808 F. Supp. 356 (S.D.N.Y. 1992) .................................................................15

*Matrix Essentials, Inc. v. Quality King Distribs.*,
    324 Fed. Appx. 22 (2d Cir. 2009) ..................................................................19

*Medical Soc. of State of N.Y. v. Toia*,
    560 F.2d 535 (2d Cir. 1977)..............................................................................8

*Moore v. Consol. Edison Co. of N.Y.*,
    409 F.3d 506 (2d Cir. 2005)..............................................................................8

*Motorola Credit Corp. v. Uzan*,
    561 F.3d 123 (2d Cir. 2009)............................................................................19

*New York v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015)............................................................................15

*Oddo v. Ries*,
    743 F.2d 630 (9th Cir. 1984) ..........................................................................12

*Pass & Seymour, Inc. v. Hubbell Inc.*,
    532 F. Supp. 2d 418 (N.D.N.Y. 2007) ...........................................................19

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*,
    324 U.S. 806 (1945).........................................................................................19

*Quality King Distributors, Inc. v. L'Anza Research Int'l, Inc.*,
    523 U.S. 135 (1998).........................................................................................11

*Reebok Int'l Ltd. v. J. Baker, Inc.*,
    32 F.3d 1552 (Fed. Cir. 1994).........................................................................18

*Reynolds v. Giuliani*,
    506 F.3d 183 (2d Cir. 2007)........................................................................8, 13

*Rodriguez ex rel. Rodriguez v. DeBuono*,
 175 F.3d 227 (2d Cir. 1999) ..........................................................................15

*Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*,
 2017 WL 737315 (S.D.N.Y. Feb. 6, 2017) ....................................................15

*Sly Magazine, LLC v. Weider Publ'ns L.L.C.*,
 346 F. App'x 721 (2d Cir. 2009) ...................................................................14

*SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*,
 1999 WL 1243894 (S.D.N.Y. Dec. 22, 1999) ...............................................18

*Spinelli v. National Football League*,
 903 F.3d 185 (2d Cir. 2018) ..........................................................................11

*Sterling Ornaments Pvt. Ltd. v. Hazel Jewelry Corp.*,
 2015 WL 3650182 (S.D.N.Y. June 10, 2015) ...............................................15

*Thomson v. Larson*,
 147 F.3d 195 (2d Cir. 1998) ..........................................................................10

*Time Warner Cable Inc. v. DirectTV*,
 No. 06 Civ. 14245 (LTS)(MHD), 2007 WL 1296205 (S.D.N.Y. 2007) ...............20

*Update Art, Inc. v. Modiin Pub., Ltd.*,
 843 F.2d 67 (2d Cir. 1988) ......................................................................13, 14

*Winter v. Nat. Res. Def. Council, Inc.*,
 555 U.S. 7 (2008) .................................................................................. *passim*

**Federal Statutes**

17 U.S.C. § 109 .............................................................................................10, 12

17 U.S.C. § 201 ....................................................................................................10

17 U.S.C. § 301 ....................................................................................................14

17 U.S.C. § 1202 ..................................................................................................14

**Rules**

Federal Rules of Civil Procedure Rule 65(c) .......................................................20

**Other Authorities**

H.R. Rep. No. 94-1476 (1976) .............................................................................10

13 Moore's Federal Practice, § 65.50 ..................................................................20

Defendants Zoetop Business Co., Ltd. ("Zoetop"), Shein Distribution Corporation ("SDC"), and Roadget Business Pte. Ltd. ("Roadget")[1] (collectively, "Defendants") respectfully respond to the Order to Show Cause for Preliminary Injunction issued at the request of Plaintiff Weijie Weng ("Plaintiff") (D.I. 14.) For the reasons described below, Plaintiff's request for a preliminary injunction should be denied.

## I.    PRELIMINARY STATEMENT

As explained in Defendants' Motion to Dissolve or Modify the Temporary Restraining Order (D.I. 31, 33-35), Defendants are caught in the middle of an apparent dispute between Lifei Zhou, the owner of one of Defendants' suppliers who provided Defendants with the accused products, and Plaintiff—a disgruntled, for-hire illustrator who previously worked for Ms. Zhou. (*See generally* Declaration of Lifei Zhou ("Zhou Decl.").) Apparently understanding that he has no rights to sue the supplier, a co-author of the registered designs Defendants are alleged to have infringed, Plaintiff directed his anger toward Defendants by obtaining an overbroad, *ex parte* temporary restraining order ("TRO"), which was only recently modified. (D.I. 43.) A preliminary injunction should not issue for three primary reasons.

First, Plaintiff cannot establish a likelihood of success on the merits of his copyright claims. The asserted "My First Birthday" and "ONE" works (the "Designs at Issue") were co-authored by the owner of Zoetop's supplier, a woman named Lifei Zhou. Acknowledging Ms. Zhou's rights, Plaintiff previously registered those alleged designs identifying Ms. Zhou as a co-author and co-owner of the Designs at Issue. But after Ms. Zhou stopped using Plaintiff as an illustrator for her businesses, Plaintiff fraudulently re-registered the same Designs at Issue under his own name alone, despite knowing that he was not the sole author or owner of the works. As a result, the

---

[1] Roadget, a Singapore company, is specially appearing to oppose this Order to Show Cause, but challenges that Plaintiff has adequately alleged the existence of personal jurisdiction over it.

asserted "My First Birthday" and "ONE" copyrights are likely unenforceable due to Plaintiff's fraud on the Copyright Office. But even if these copyrights are enforceable, Plaintiff cannot maintain suit against Defendants because Zoetop's and/or SDC's allegedly infringing sales are lawful under the first sale doctrine. They had purchased the products at issue from a legitimate rights owner.

Second, Plaintiff has also failed to meet his heavy burden to prove there is "immediate and irreparable injury, loss, or damage" sufficient to warrant a preliminary injunction. Plaintiff only speculates that Defendants' sales of allegedly inferior products have harmed his reputation. Such conclusory and unsubstantiated assertions cannot show irreparable harm. He simply has not demonstrated that monetary damages would not be adequate. As for the allegedly inferior products, Plaintiff purchased and sold *the same products* Defendants purchased and sold from the *same supplier*, so there can be no reputational harm from these authorized sales. There is also no harm because, out of an abundance of caution, Defendants have voluntarily ceased all sales of the products accused of infringing the asserted copyrights.

Finally, Plaintiff has failed to show that any alleged harm outweighs the hardships to Defendants or that the TRO will serve the public interest. Indeed, an injunction would be contrary to the public interest in that it would reward a plaintiff who engaged in fraud on the Copyright Office and was less than forthright with this Court.

Plaintiff thus has not – and cannot – come close to meeting the stringent requirements for this extraordinary and drastic remedy. Without such a showing, an injunction may not issue. But in the unlikely event that it does, Defendants seek to increase the security that Plaintiff is required to post, to ensure that Defendants can recover damages when it is ultimately determined that Plaintiff had no right to enjoin Defendants' legitimate business activity.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff and the Alleged Copyrights at Issue, Which Were Co-Created by Defendants' Supplier

Plaintiff is a person who purportedly owns copyrights in and to several works displayed on children's apparel. (Declaration of Nina D. Boyajian (D.I. 34) ("Boyajian Decl."), Ex. E (website); D.I. 27 ¶ 30.) All of Plaintiff's "works" are directed to word designs for generic phrases, such as "My First Christmas," "My First Easter," etc. (Boyajian Decl. ¶ 8, Ex. C.) In this action, Plaintiff alleges ownership of copyrights in three such registered word designs: (i) Registration No. VA 2-308-195 (the "'195 Registration"), for a work entitled "MY 1ST BIRTHDAY," (ii) Registration No. VA 2-254-020 (the "'020 Registration"), for a work entitled "First 4th of July 52918"; and (iii) Registration No. VA 2-314-705 (the "'705 Registration"), for a work entitled "ONE." (D.I. 27 ¶ 31; D.I. 28-4.) The '195 and '705 Registrations identify Plaintiff as the sole author of "MY 1ST BIRTHDAY" and "ONE," respectively (the "Designs at Issue"). (Boyajian Decl. ¶ 12; Declaration of Lifei Zhou ("Zhou Decl.") ¶ 3.)

However, in reality, a woman named Lifei Zhou created the designs for the Designs at Issue, and only hired Plaintiff to illustrate those designs. (Zhou Decl. ¶ 4.) Ms. Zhou is the owner and founder of Lishui Feike Clothing Factory of Children and Lishui Yuke Garments Co., Ltd. (collectively, "Zhou Companies"), companies that design and manufacture clothing garments. (*Id.* ¶ 1.) The Zhou Companies use original designs, created by Ms. Zhou and other employees, to manufacture clothing garments incorporating those designs. (*Id.* ¶ 2.) Those ready-made garments are then sold to retailers around the world. (*Id.*) The Zhou Companies were named in Plaintiff's original

Complaint in this action but have since been dropped from this case. (*Compare* D.I. 1-3 *with* D.I. 27; Boyajian Decl. ¶ 5; Declaration of Tim Wei (D.I. 35) ("Wei Decl.") ¶ 7.)

Ms. Zhou created the designs for the Designs at Issue, and only hired Plaintiff to illustrate them. (Zhou Decl. ¶ 4, Ex. A.) At the time, Plaintiff was aware that Ms. Zhou intended to incorporate the Designs at Issue into products for sale to other companies and over the Internet. (*Id.* ¶ 4.) Since before Plaintiff started illustrating for Ms. Zhou, he was a customer of Ms. Zhou's wholesale business and was aware that Ms. Zhou sells products with her original designs to various other companies and brands, including SHEIN. (*Id.*)

The Zhou Companies have sold products incorporating the "MY 1ST BIRTHDAY" design on eBay and Amazon since March 19 and 31, 2021, respectively. (*Id.* ¶ 5.) Ms. Zhou also supplied products with the Designs at Issue to retailers such as Defendants and Plaintiff, who sold those products on their respective websites. (*Id.*) Plaintiff has been offering for sale products with the Designs at Issue using product photographs taken and owned by the Zhou Companies. (*Id.*) Ms. Zhou never agreed to *exclusively* supply products incorporating the Designs at Issue to Plaintiff, and Plaintiff was aware that Ms. Zhou supplied such products to numerous retailers, including SHEIN and Plaintiff. (*Id.*) Indeed, Plaintiff has never previously taken action against the Zhou Companies for their sales of these products on eBay and Amazon.

Ms. Zhou applied for a copyright registration for the "MY 1ST BIRTHDAY" design on March 24, 2021, but did not obtain a registration. (*Id.* ¶ 6, Ex. B.) Because Ms. Zhou is not fluent in English, she hired Plaintiff to obtain a copyright registration for "MY 1ST BIRTHDAY," listing Ms. Zhou, Plaintiff, and Qinmei Yu as co-authors on the application. (*Id.*) The three co-authors obtained a

copyright registration for "MY 1ST BIRTHDAY" on February 7, 2022, under Copyright Registration No. VAu001462941. (*Id.* ¶ 6, Ex. C.)

Ms. Zhou also hired Plaintiff to obtain a copyright registration for the "ONE" design. (*Id.* ¶ 7.) Again, Ms. Zhou, Plaintiff, and Qinmei Yu were listed as co-authors on the application. (*Id.*) The three co-authors obtained a copyright registration for "ONE" and 5 other designs on February 7, 2022, under Copyright Registration No. VAu001462938. (*Id.* ¶ 7, Ex. D.)

**B.**    **The Defendants and the Goods at Issue**

Zoetop was a global fashion and lifestyle e-tailer committed to making fashionable, on-trend products accessible to everyone. (Wei Decl. ¶ 2.) Zoetop sold products to U.S. consumers through the us.shein.com and us.romwe.com websites and associated mobile apps (the "US Websites") through July 31, 2021. (*Id.*) Zoetop is no longer operational and does not sell any products. (*Id.*)

A separate entity, SDC, began selling products to U.S. consumers through the US Websites starting August 1, 2021. (*Id.* ¶ 3.) Roadget, by contrast, does not sell *any* products to U.S. consumers. (*Id.*) Rather, Roadget is SDC's indirect operating parent and the owner of the US Websites, which it licenses to SDC. (*Id.* ¶ 15.)

Zoetop sold, and SDC now sells, products in categories ranging from apparel (women's, men's, and children's), footwear, home goods, and accessories. (*Id.* ¶¶ 2-3.) Since 2017 alone, Zoetop and SDC have sold millions of products to consumers around the world on their websites. (*Id.* ¶ 4.) Thousands of new products are added to the US Websites every day. (*Id.*) Zoetop was, and SDC is, a sophisticated e-commerce retailer, and the SHEIN brand has a major global following. (*Id.*) SDC has a significant United States presence. (*Id.*) For example, SDC is a Delaware Corporation with a principal place of business in Los Angeles, California, and has a robust social media presence on U.S. social media platforms. (*Id.*)

Plaintiff alleges goods ("Goods at Issue") were sold by Defendants that infringe the copyright in the Designs at Issue. (D.I. 27 ¶ 28.)[2]  Defendants did not design or make the Goods at Issue. (Wei Decl. ¶ 7.) As explained above, Zoetop procured the Goods at Issue as ready-made, finished goods from an unaffiliated, third-party supplier, Lishui Yuke Garments Co., Ltd. ("Supplier") owned by Lifei Zhou—a co-author of the Design at Issue. (*See* Section II.A., *supra.*; *see also* Zhou Decl. ¶ 2; Boyajian Decl. ¶ 9-11; Wei Decl. ¶ 7.) The Supplier had a supplier relationship with Zoetop, and now currently has a supplier relationship with Roadget, under which Supplier supplied/supplies goods to those Defendants. (Zhou Decl. ¶ 2; Wei Decl. ¶ 7.) In the Supplier Agreement, the Supplier represented and warranted that the products it supplied did not infringe any third-party intellectual property rights, which are defined in the contract to include designs, texts, and patterns. (Zhou Decl. ¶ 2; Wei Decl. ¶ 7.)

Additionally, as Defendants have learned, the Supplier (*not Plaintiff*) created the Designs at Issue, and merely hired Plaintiff to illustrate them and provide assistance registering them with the Copyright Office due to her limited English. (Zhou Decl. ¶¶ 4-7.) Plaintiff, apparently displeased with the Supplier's decision to use another supplier (*Id.* ¶ 8), is now trying to pass off designs he had registered jointly with the Supplier's owner in his name alone and extract payments from the Supplier's legitimate customers. Indeed, the Supplier had no knowledge of Plaintiff's efforts to obtain additional copyright registrations in the Design at Issue until after Plaintiff filed this lawsuit. (*Id.* ¶ 9.) Plaintiff did not inform the Supplier that he would be obtaining registrations in the Designs at Issue that listed only him as the author because, if he did, the Supplier would have disputed those applications. (*Id.*)

Immediately upon becoming aware of Plaintiff's allegations in his original Complaint, out of an abundance of caution, SDC removed two product listings for the Good at Issue alleged to infringe

---

[2] Neither Zoetop nor SDC has ever sold a product that could have allegedly infringed on Plaintiff's alleged "My First 4th of July" design. (D.I. 27; D.I. 28-5—28-7.)

the "MY 1ST BIRTHDAY" design from the US Websites and will refrain from offering them for sale pending the resolution of this case. (Wei Decl. ¶ 5.) Upon receiving the TRO, Defendants took steps to remove the remaining listings for the Goods at Issue. (*Id.*; Boyajian Decl. ¶¶ 6, 14.) None of the Defendants ever received any cease and desist correspondence—or any other correspondence—from Plaintiff prior to his filing suit or seeking a TRO. (Wei Decl. ¶ 5.)

**C.**   **Procedural History**

Plaintiff, without notice, filed his Complaint (D.I. 1) and supporting papers, seeking a TRO, preliminary injunction, and expedited discovery against multiple parties allegedly engaged in a widespread conspiracy to infringe two commonplace designs. (D.I. 1-5, 7.) Plaintiff filed an Amended Complaint and other documents purportedly in support of his TRO application under seal, replacing certain defendants with others and adding another allegedly infringed work. (D.I. 27.)

As discussed in Defendants' motion to dissolve or modify the TRO, Plaintiff's pleadings were ***plagiarized*** from (i) documents prepared by ***counsel for the Defendants*** in an unrelated case: *Ningbo Mizhihe I&E Co. v. Does 1-200, et al.*, 19-CV-6655 (AKH), and (ii) the unsubstantiated allegations found in pleadings in another litigation against Zoetop and SDC, *Mollmann v. Zoetop Business Co., Ltd. et ano.*, No. 2:22-cv-04128-PA-GJS. While Plaintiff has responded to Defendants' filings in other ways (D.I. 39, 40, 41, 46, 47), he has never denied that he copied filings from unrelated cases to prepare the pleadings and other papers submitted in this case.

On January 6, 2023, Defendants moved to dissolve or modify the TRO based on the many deficiencies in Plaintiff's TRO application. (D.I. 31, 33-35.) The Court issued an Order on January 9, modifying the TRO to apply to only the three works identified in the Amended Complaint and lifting the asset freeze as to Defendants. (D.I. 43.) Plaintiff has submitted various filings opposing Defendants' motion to dissolve the TRO. From what Defendants can glean from these filings, Plaintiff

apparently does not dispute that he was employed by the Supplier and that he purchased the same goods Defendants were provided by the Supplier and authorized to sell. (Zhou Decl. ¶¶ 4-5; D.I. 46; Ex. E to D.I. 46.)

To date, no Defendant has been properly served in the manner required by Fed. R. Civ. P. 4. (Wei Decl. ¶¶ 8-9; Boyajian Decl. ¶¶ 2-3.) Neither SDC (a domestic entity) nor Zoetop has been served with the Summons or Complaint. (Wei Decl. ¶ 8; Boyajian Decl. ¶ 2.) Plaintiff purported to serve *Roadget* with the Summons and the TRO (but not the Complaint) by emailing those documents to some of Defendants' counsel of record, along with dispute@shein.com and copyright@shein.com. (Wei Decl. ¶ 9; Boyajian Decl. ¶ 2.) Thus, even Plaintiff's service of Roadget remains ineffective.

### III.   LEGAL ARGUMENT

#### A.   <u>Legal Standard</u>

A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies," and "an extraordinary and drastic remedy which should not be routinely granted." *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985); *Medical Soc. of State of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977); *accord Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). Indeed, the "authority to issue an injunction is an extraordinary and powerful one that is to be used sparingly and cautiously and only in a 'clear and plain' case." *Reynolds v. Giuliani*, 506 F.3d 183, 198 (2d Cir. 2007) (citation omitted). The Supreme Court has made clear that a preliminary injunction "may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added).

Thus, a "plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public

interest." *Id.* at 20 (collecting cases); *see also, e.g., ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). Plaintiff cannot carry his burden.

**B.** **Plaintiff Is Not Likely to Succeed on the Merits of His Claims**

1. Because SDC Has Ceased the Allegedly Infringing Activity, any Preliminary Injunction Is Moot and Success on the Merits Need Not Be Reached

"[T]o establish that there is a likelihood of success on the merits, as required for an injunction [] to lie, the movant must establish that the case is not likely to be moot." *Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (internal citations omitted); *see also Holland v. Goord*, 758 F.3d 215, 223 (2d Cir. 2014) ("[V]oluntary cessation of a challenged practice …[is] an important factor bearing on the question whether a court should exercise its power to entertain a request for injunctive relief or declare it moot."). In *Granite*, before the hearing on the preliminary injunction, the defendant remedied the complained-of conduct, allegedly unjust zoning regulations, by amending the regulations at issue. 303 F.3d at 451. The court consequently held that the plaintiff's motion was moot and thus unlikely to succeed on the merits as the defendant had "completely revised its regulations through proper procedures." *Id.* at 451-52. Similarly, here, SDC, which is the only entity selling products through the US Websites, has "voluntarily ce[ased] [the] challenged practice" (*see* Wei Decl. ¶ 5), rendering a preliminary injunction moot. Thus, Plaintiff cannot show that he is likely to succeed on the merits of his claims.

2. Defendants' Sales Are Lawful under the First Sale Doctrine

Even if a preliminary injunction were not moot (it is), Plaintiff is not likely to succeed on the merits of his claims. The Goods at Issue, which Plaintiff claims are infringing the Designs at Issue, were sold to Defendants by the Supplier, Lishui Yuke Garments Co., Ltd. (Wei Decl. ¶ 7.) Lifei Zhou, the Supplier's owner, created the Designs at Issue, and is thus a co-author and co-owner of those same

designs. (Zhou Decl. ¶ 4). Indeed, Ms. Zhou is named as a co-author and co-owner of those designs on the '941 and '938 Registrations—registrations which issued months before Plaintiff fraudulently obtained the '195 and '705 Registrations he asserts in this case. (*See* Boyajian Decl. ¶¶ 9-11 (comparing registrations); Zhou Decl. ¶¶ 6-7.) The fact that the Supplier was ***dropped*** as a defendant in this very lawsuit indicates that Plaintiff determined that the Supplier could not be liable for copyright infringement based on Ms. Zhou's creation and ownership of the works and the Supplier's authority to lawfully make and sell goods bearing the Designs at Issue. (*Compare* D.I. 1-3 *with* D.I. 27.)

"Copyright in a work protected under [the Copyright Act] thus initially vests in the author or authors of the work." 17 U.S.C. § 201(a). "The authors of a joint work are co[-]owners of copyright in the work." *Id.* As described in the House Report accompanying passage of the Copyright Act, co-owners must "be treated generally as tenants in common, with each co[-]owner having an independent right to use or license the use of a work, subject to a duty of accounting to the other co[-]owners for any profits." H.R. Rep. No. 94-1476, at 121 (1976); *see Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998) ("Joint authorship entitles the co-authors to equal undivided interests in the whole work − in other words, each joint author has the right to use or to license the work as he or she wishes, subject only to the obligation to account to the other joint owner for any profits that are made.").

The Copyright Act further provides that "the owner of a particular copy … lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy[.]" 17 U.S.C. §109(a). This provision of copyright law is known as the "first sale doctrine." *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 523-24 (2013). As the Supreme Court held, "in copyright jargon, the 'first sale' has 'exhausted' the copyright owner's § 106(3) exclusive distribution right." *Id.* at 524.

The first sale doctrine applies even to copies lawfully made abroad. *Id.* at 525; *see also Quality King Distributors, Inc. v. L'Anza Research Int'l, Inc.*, 523 U.S. 135 (1998).

Here, the Supplier created the designs for the Designs at Issue and is a co-author and co-owner of registrations to these Designs that Plaintiff applied for months before the registrations asserted here. (Zhou Decl. ¶¶ 4-7.) As such, the Supplier was clearly able to make the Goods at Issue and sell them to Defendants, which Plaintiff was aware of when he was working for the Supplier. (*Id.*) Indeed, the Supplier never agreed to exclusively supply products incorporating the Designs at Issue to Plaintiff. (*Id.*) Defendants procured the Goods at Issue as ready-made, finished goods from the Supplier. (Wei Decl. ¶ 7.) In the contract between Zoetop and the Supplier, the Supplier represented and warranted that the products it supplied did not infringe any third-party intellectual property rights. (*Id.*) Accordingly, under the first sale doctrine, Defendants are statutorily permitted to sell the Goods at Issue and cannot be liable for Plaintiff's claims of copyright infringement. Or, put another way, Defendants were licensed by the Supplier to further sell the Goods at Issue to their customers. *See Spinelli v. National Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (valid license "immunizes the licensee from a charge of copyright infringement").

In fact, it is clear that Ms. Zhou was permitted to make the Goods at Issue even if she had not been a co-author or co-owner of the designs, as evidenced by Ms. Zhou's payment to Plaintiff. Ms. Zhou paid Plaintiff for his illustrations. (Zhou Decl. ¶ 4; Ex. A thereto.) Plaintiff was aware when he illustrated and provided the Designs at Issue to the Supplier in exchange for those payments that Supplier intended to incorporate them into products for sale to various other companies, including Defendants. (Zhou Decl. ¶ 4.) Indeed, the Zhou Companies sold products incorporating the "MY 1ST BIRTHDAY" design on eBay and Amazon since March 2021 without Plaintiff taking any action whatsoever to stop such sales. (*Id.* ¶ 5.)  Plaintiff was also aware that the Supplier did not enter any

exclusive arrangement with Plaintiff to supply him with products incorporating the Designs at Issue to Plaintiff because the Supplier intended to sell these products to others, including Defendants. (*Id.* ¶ 5.) Thus, Plaintiff at least had impliedly licensed his illustrations to Ms. Zhou so that she could incorporate them into her products, even if he did not consider her an author or owner. *See, e.g.*, *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990), *cert. denied*, 111 S. Ct. 1003 (1991) (finding an implied license where plaintiff "created a work at defendant's request and handed it over, intending that defendant copy and distribute it."); *Oddo v. Ries*, 743 F.2d 630 (9th Cir. 1984) (same). Even in that situation, the Supplier's products were lawfully made, and the Supplier could supply the Goods at Issue to Defendants, and Defendants could in turn sell them to consumers, under the first sale doctrine. 17 U.S.C. § 109(a). Plaintiff's attempt to avoid the first sale doctrine should be rejected.[3]

It is notable that Plaintiff attempted to register the copyrights to the Designs at Issue in his name alone—and then sue Defendants and other third parties that are allegedly affiliated with Ms. Zhou—*only after* Ms. Zhou stopped using Plaintiff as an illustrator and hired another one. (*Compare* Zhou Decl. ¶ 8 (Ms. Zhou "stopped using Plaintiff's services in or around April 2022 and hired another illustrator or around May 2022") *with* D.I. 28-4 at 4 (registration with effective date in July 2022) *and* D.I. 1 (Complaint filed August 2022).) Plaintiff may assert that Ms. Zhou was not an author of the Designs at Issue and was not authorized to create the Goods at Issue. But the credibility of Plaintiff's

---

[3] Plaintiff has attempted to overreach in asserting intellectual property protection in other ways as well. For example, Plaintiff submitted at least 24 "intent to use" trademark applications to the U.S. Patent and Trademark Office, seeking exclusive trademark rights over many of the same generic phrases for which he obtained copyright registrations. (Boyajian Decl. ¶¶ 14-15.) Of course, no one has the right to obtain trademark protection for phrases such as "My First Birthday," "My First Fourth of July," "Merry Christmas", and the like. But Plaintiff's brazen attempt to do so casts further doubt on the likelihood of success on his claims against Defendants—a similar form of intellectual property overreach.

assertions should be called into question by at least this sequence of events, which cannot be sheer coincidence.

In any event, this lawsuit is the product of a dispute between two former collaborators whose versions of events vary widely. Defendants are caught in the crossfire. This is not a "clear and plain case" of infringement, as required to obtain the "extraordinary remedy" of a preliminary injunction. *Reynolds*, 506 F.3d at 198. Accordingly, Plaintiff has not shown that he is likely to succeed on the merits, and his application for a preliminary injunction must be denied.

### 3.     Defendants' Alleged International Sales Do Not Violate the Copyright Act

To support his claims, Plaintiff submits documents referring to several purchases of allegedly infringing Goods at Issue made by Plaintiff's wife, Qinmei Yu. (D.I. 29 ("Proof of Defendants SHEIN's Willful Infringement & Unfair Competition"); D.I. 29-7 (Yu Declaration).) As stated in those documents, Ms. Yu's purchases were from "SHEIN's other websites," including "ph.shein.com," "asia.shein.com," and other overseas websites. (D.I. 29 ¶¶ 3-4; *see also* Schedule A thereto (listing locations in "Asia," "Philippines," "South Africa," "Europe," and "Israel").)

Even if Defendants made those sales to consumers—they did not[4]—the overseas sales of allegedly infringing goods do not violate the Copyright Act, and thus do not indicate that Plaintiff is likely to succeed on his claims. "It is well established that copyright laws generally do not have extraterritorial application." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988). This precept is in accordance with interpretation of United States laws generally; as the Supreme Court held, "[i]t is a longstanding principle of American law that legislation of Congress, unless a contrary intent

---

[4] Zoetop no longer sold products after July 31, 2021, and thus cannot be responsible for the alleged sales here, which purport to have taken place in 2022. (Wei Decl. ¶ 2.) SDC is a United States company and only sells via the US Websites. (*Id.* ¶ 3.) While the Exhibits to Plaintiff's alleged "proof" of "SHEIN's" infringement contain some references to Roadget, Roadget does not perform the sales activities that Plaintiff seeks to ascribe to it. But that is of no moment, since sales outside the United States are not actionable.

appears, is meant to apply only within the territorial jurisdiction of the United States." *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, *abrogated by statute on other grounds*, Pub. L. No. 102-166 § 109, 105 Stat. 1071 (1991). The only exception to this is "[w]here an individual commits an act of infringement in the United States that permits further reproduction outside the United States—such as where an individual makes unauthorized copies of copyrighted material and sends them out of the country," in which case "a court may assert jurisdiction over those foreign acts and a plaintiff may recover damages that took place extraterritorially." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 WL 724723, at *4 (S.D.N.Y. Dec. 17, 1996) (citing *Update Art*, 843 F.2d at 73). Here, though, Plaintiff provides no proof, and does not even try to show, that Defendants committed a predicate act of *domestic* infringement permitting the extraterritorial sales identified in Plaintiff's documents. Indeed, even assuming Roadget, a Singaporean company, or Zoetop, a Hong Kong company, obtained the Goods at Issue from a Chinese Supplier and sold, permitted, or facilitated the sale of those Goods at Issue in Asia or elsewhere, that entire chain of activity would have taken place outside the United States. Thus, the exception set forth in *Update Art* does not apply, and Defendants' alleged extraterritorial sales are irrelevant to the Plaintiff's likelihood of success on its claims for copyright infringement under domestic law.[5]

---

[5] Plaintiff's TRO Application is grounded solely in its alleged likelihood of success on its copyright infringement claim. D.I. 5 at 23-24. Plaintiff's Amended Complaint also includes a claim for alleged unfair competition, but Plaintiff does not explain in its Application why it would likely succeed on that claim. In any case, Plaintiff's claim for unfair competition hinges on the alleged unauthorized reproduction and/or distribution of allegedly infringing designs and is thus preempted by the Copyright Act. 17 U.S.C. § 301; *see Kregos v. Assoc. Press*, 3 F.3d 656, 665-66 (2d Cir. 1993). Moreover, a claim for unfair competition under New York law requires "some showing of bad faith on the part of the defendants," *Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009), and Plaintiff has neither plead nor provided any evidence suggesting that Defendants acted in bad faith. Indeed, as Zoetop mandated that its Supplier enter into a contract wherein the Supplier warranted that the goods it provided were non-infringing, Defendants could only have said to be proceeding in good faith. Thus, Plaintiff is unlikely to succeed on the merits of his unfair competition claim as well. Finally, Plaintiff's Amended Complaint includes, in its prayer for relief, an award based on alleged violations of the Lanham Act, 15 U.S.C. §1117, and the Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)-(b). (D.I. 27 ¶¶ 49-62.) These requests are likely the result of Plaintiff's undisputed plagiarism of the pleadings of third parties, as Plaintiff does not state a claim or assert causes of action under these statutes.

**C.**     **Plaintiff Will Not Suffer Any Irreparable Harm Absent a Preliminary Injunction**

"[I]rreparable harm is the *'sine qua non'* for a preliminary injunctive relief." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. App'x 31, 33 (2d Cir. 2016) (emphasis in original); *see also Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction."). "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015). "Since monetary injury generally does not constitute irreparable harm, 'a plaintiff seeking damages must prove either that the defendant took steps to frustrate a future judgment or that the defendant is or imminently will be insolvent' in order to" show irreparable harm. *Shaoxing Bon Textiles Co. v. 4-U Performance Grp. LLC*, 2017 WL 737315, at *3 (S.D.N.Y. Feb. 6, 2017) (quoting *Sterling Ornaments Pvt. Ltd. v. Hazel Jewelry Corp.*, 2015 WL 3650182, at *1 (S.D.N.Y. June 10, 2015).

Plaintiff alleges that he will suffer irreparable harm without the injunction for two reasons: (1) that Defendants' alleged sale of lower quality infringing goods caused him reputational harm (D.I. 5 at 24);[6] and (2) that there is a risk that the Defendants would be unable to satisfy a judgment (*id.* at 28-31). Plaintiff has provided no evidence for either of these alleged harms. Courts in this Circuit have rejected such speculative arguments in deciding whether to issue temporary restraining orders or preliminary injunctions. *Clonus Assocs. v. Dreamworks, LLC*, 417 F. Supp. 2d 248, 254 (S.D.N.Y. 2005) (finding no irreparable harm where "plaintiff's claim [wa]s unsupported by concrete evidence.").[7]

---

[6] Plaintiff's *Ex Parte* Application for a Temporary Restraining Order (D.I. 5) does not have internal page numbers. Citation to page numbers refers to the pagination in ECF filings at the top of each page.

[7] *See also, e.g.*, *Marcy Playground, Inc. v. Capitol Records, Inc.*, 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) ("The only evidence [of irreparable harm is] the conclusory and unsubstantiated assertions of irreparable injury by [the parties]…The most that can be said is that they have advanced a speculative theory."); *Marisa Christina, Inc. v. v. Bernard Chaus, Inc.*,

While Plaintiff is correct that the loss of customer goodwill and reputation *could* constitute irreparable harm in some cases, he has not shown that his reputation has been damaged with the requisite specificity. Indeed, based on Plaintiff's recent filings, any alleged reputational harm is unfounded, as Plaintiff's purportedly "superior goods" were bought from the *same entity* that that supplied Defendants. (Zhou Decl. ¶¶ 4-5; D.I. 46; Ex. E to D.I. 46.)

Plaintiff further provides no evidence of any customer reviews or complaints that Defendants' products were of inferior quality – nor could he. Plaintiff also has provided no evidence showing that his products have a "reputation of quality." (D.I. 5 at 24.) Plaintiff's bare speculation of potential damage to his reputation cannot demonstrate irreparable harm. To the contrary, "Plaintiffs must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but ***actual and imminent***.'" *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) (emphasis added). As the Supreme Court has cautioned:

> Issuing [injunctive relief] based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

*Winter*, 555 U.S. at 22. The "mere possibility of irreparable harm" – which is at best what Plaintiff alleges here – "is insufficient to justify the drastic remedy of a preliminary injunction." *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 934 F.2d 30, 34 (2d Cir. 1991).

Further, Plaintiff will suffer no immediate or irreparable harm here as SDC, out of an abundance of caution, has already stopped selling the Goods at Issue on the US Websites, thereby neutralizing any alleged harm to Plaintiff and mooting the TRO. (*See* Wei Decl. ¶¶ 2-5; Boyajian ¶ 6.)

---

808 F. Supp. 356, 359 (S.D.N.Y. 1992) ("Plaintiff's chief argument seems to be that a customer who bought one of the plaintiff's sweaters from last year may see one of defendant's substantially similar copies selling at half price and feel that they were ripped off by the plaintiff. The plaintiff has presented no evidence in the record to support what is a [wholly] speculative claim of injury. Plaintiff's theory of irreparable harm standing on its own is too hypothetical to form the basis for a preliminary injunction.") (citation omitted).

"[V]oluntary cessation of a challenged practice …[is] an important factor bearing on the question whether a court should exercise its power to entertain a request for injunctive relief or declare it moot." *Holland*, 758 F.3d at 223.

Plaintiff's recent filings allegedly showing financial distress highlight the lack of irreparable harm. These filings make clear that Plaintiff is motivated by the prospect of monetary damages resulting from alleged lost sales, not equitable remedies. (D.I. 46 ¶¶ 16 (discussing "loss of future sales" and discussing inability to meet financial obligations), 18 (discussing financial "losses").) But "[l]ost sales (without more) are presumed to be compensable through damages," and "do not require injunctive relief." *Automated Merch. Sys. v. Carne Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009).

Thus, Plaintiff cannot sustain his burden of showing immediate and irreparable harm. For this additional independent reason, his application for a preliminary injunction should be denied.

**D.    The Hardships to Defendants Outweigh Any Alleged Harm to Plaintiff**

Plaintiff has failed to allege any harm, and thus cannot show that any such alleged harm would outweigh the hardship to Defendants if a preliminary injunction is entered. Plaintiff cannot prove – and, at a minimum, has not proven – that his position in the market has been harmed as a result of Defendants' alleged conduct, and thus Plaintiff fails to prove that he has been or will be harmed at all, let alone irreparably. *See* Section III.C, *supra*. Additionally, as detailed above, there is no irreparable or immediate harm to Plaintiff, as any such harm has already been remedied by SDC's removal of the product listings from its website and its certification that it will refrain from offering them for sale pending the resolution of this case. (*See* Wei Decl. ¶¶ 2-5; Boyajian ¶ 6.)

In considering the balance of hardships, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. This court has recognized that the "hardship on a preliminarily enjoined

manufacturer who must withdraw its product from the market before trial can be devastating." *Giantceutical, Inc. v. Ken Mable, Inc.*, 356 F. Supp. 2d 374, 382 (S.D.N.Y. 2005). Nevertheless, SDC has already done so, despite the fact that Plaintiff is unlikely to show that the Goods at Issue were unlawfully made and sold. Any broader injunction will only cause it and the other Defendants further harm.

Thus, the balance of hardships strongly weighs against an injunction.

**E.**    <u>**An Injunction Will Not Serve the Public Interest**</u>

A plaintiff seeking a preliminary injunction must also establish that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Plaintiff argued that the requested TRO would serve public interest because it would prevent inferior products from entering the market and it would enforce copyright protections. (D.I. 5 at 26-27.) But as explained in Section III.C, *supra*, Plaintiff has not provided any evidence that Defendants' products were of inferior quality. Indeed, both Plaintiff's and Defendants' products were made by the same supplier. (Zhou Decl. ¶¶ 4-5; D.I. 46; Ex. E to D.I. 46.) Nor has he shown that his own products are of superior quality and meet "rigorous consumer product safety standards." (D.I. 5 at 26.)

The public's interest in enforcing copyright protections, present in every copyright case, also does not justify a preliminary injunction. *Cf. Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558-59 (Fed. Cir. 1994). Indeed, that public interest can be served by awarding monetary damages, if the asserted copyrights were infringed and valid. *See, e.g.*, *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 1999 WL 1243894, at *6 (S.D.N.Y. Dec. 22, 1999), *aff'd*, 211 F.3d 21 (2d Cir. 2000) (explaining that "the public's interest in the protection of copyrights can be vindicated to some degree by an award of money damages," and dissolving preliminary injunction even though "money damages [were] not likely to fully compensate SmithKline for its injuries").

The public also has a countervailing interest in market competition. *Matrix Essentials, Inc. v. Quality King Distribs.*, 324 Fed. Appx. 22, 24 (2d Cir. 2009) (explaining that an "injunction, if enforced, would keep one significant competitor out of the [] market…possibly driving up prices…and implicating the same public interest in competition"). Indeed, this court has held that in considering whether to issue injunctive relief, "any reduction in competition must be considered against the public interest." *Dellwood Foods, Inc. v. Kraftco Corp.*, 420 F. Supp. 424, 428 (S.D.N.Y. 1976). Enjoining Defendants from selling reasonably priced, accessible clothing and accessories—that it lawfully obtained from a Supplier who indicated that ***she*** created the Designs at Issue, no less—would reduce competition, to the public's detriment. (Exhibit A.) The "powerfully anti-competitive repercussions which [an injunction] can bring about [] is aptly illustrated in this case, in which [Plaintiff] seeks to invoke the court's power, prior to a determination on the merits, to preclude a potential direct competitor" from offering a new product. *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 431-32 (N.D.N.Y. 2007). Additionally, as discussed above, children's clothing containing the alleged works are commonplace goods, and any injunction prohibiting production and sale of the same would give Plaintiff a monopoly on such goods, which would only stymie competition and creativity in the fashion market.

Moreover, one "who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945); *see also Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009) ("The clean hands doctrine is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.") (quotations omitted). Continuing an ill-gotten TRO by someone

who has likely committed fraud on the Copyright Office and plagiarized from several court records is contrary to the public interest and strains the bounds of equity.

**F.**     **Should The Court Be Inclined To Grant The Injunction, Plaintiff Should Be Required To Increase the Bond**

Rule 65(c) of the Federal Rules of Civil Procedure requires that a bond be posted when a preliminary injunction is issued. The purpose of the bond is to "guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained." 13 Moore's Federal Practice, §65.50[3]. While determining the amount of the bond rests within the sound discretion of the District Court, *Time Warner Cable Inc. v. DirectTV*, No. 06 Civ. 14245 (LTS)(MHD), 2007 WL 1296205, at *2 (S.D.N.Y. 2007), it has been recognized that "in setting the amount of security for [injunctive relief] should err on the high side." Moore's, *supra*, at 65-94.

Should this Court grant a preliminary injunction, such an injunction should be conditioned on an increased undertaking in the amount of at least $200,000.00. If a preliminary injunction is issued enjoining Defendants' conduct, and it is ultimately determined that Plaintiffs had no right to block those sales—because, for example, Ms. Zhou is found to have been a co-author and co-owner of the Designs at Issue, which is exceedingly likely to be the case—SDC will have suffered substantial injury to its existing business. *See Johnson Controls Inc. v. APT Critical Sys., Inc.*, 323 F. Supp. 2d 525, 541 (S.D.N.Y. 2004) (granting undertaking equal to amount of potential lost profits of defendant). The currently posted undertaking ($500.00) is plainly insufficient to compensate for that injury. The requested $200,000.00[8] represents less than half of a conservative estimate of the amount of sales SDC anticipates it will lose.[9] This estimate is based on historical sales data for the

---

[8] This bond amount does not include attorney's fees, which Defendants reserve the right to seek in opposing this meritless suit and given Plaintiff's brazen conduct.

[9] At the Court's request, SDC will submit for the Court's review, documentation supporting an undertaking in this amount.

accused products.

## IV.    CONCLUSION

For these reasons, the Court should respectfully deny Plaintiff's request for a Preliminary

Injunction.

Dated:  January 10, 2023                    **GREENBERG TRAURIG, LLP**

By:  */s/ Justin A. MacLean*

Justin A. MacLean
Giancarlo L. Scaccia
One Vanderbilt Avenue
New York, NY 100017
Tel: 212-801-3137
Email: Justin.MacLean@gtlaw.com
Email: scacciag@gtlaw.com

Nina D. Boyajian *(Pro Hac Vice*)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Tel: 310-586-7700
Email: BoyajianN@gtlaw.com

*Attorneys for Defendants Zoetop Business Co., Ltd.,*
*Shein Distribution Corporation, Roadget Business*
*Pte. Ltd.*